**In re INTERNATIONAL FLAVORS & FRAGRANCES INC.**

**No. 98–1517.**

United States Court of Appeals, Federal Circuit.

July 20, 1999.

---

With him on the brief were Michael J. Donnelly and Nancy C. Slutter, Associate Solicitors.

Before CLEVENGER, BRYSON, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

■ International Flavors & Fragrances Inc. ("IFF") appeals from a decision of the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("the Board") affirming the final rejections of three trademark applications, Application Serial Nos. 74/532,528, 74/532,529, and 74/591,331, each seeking to register a "phantom" trademark.[1] *See In re International Flavors & Fragrances Inc.,* 47 USPQ2d 1314 (TTAB May 19, 1998). Because we find that the Board did not err in refusing to register the marks described in IFF's applications, we affirm.

## BACKGROUND

Appellant IFF is a New York corporation engaged in the business of producing and marketing flavor and fragrance essences. In 1994, IFF sought to register with the U.S. Patent and Trademark Office ("the PTO") "LIVING XXXX FLAVORS" and "LIVING XXXX FLAVOR"[2] as trademarks for the following goods:

essential oils for use in the manufacture of flavored foodstuffs, smoking tobacco compositions, smoking tobacco articles, chewing tobacco compositions, chewing gums, oral care products and beverages in International Class 3; and non-synthetic and synthetic flavor substances for use in the manufacture of flavored foodstuffs, smoking tobacco compositions, chewing tobacco compositions,

Arthur L. Liberman, Patent and Trademark Counsel and Assistant Secretary, International Flavors & Fragrances Inc., of New York, New York, argued for the appellant. With him on the brief were Robert G. Weilacher and Helen Hill Minsker, Beveridge, DeGrandi, Weilacher & Young, LLP, of Washington, DC.

Albin F Drost, Acting Solicitor, U.S. Patent and Trademark Office, of Arlington, Virginia, argued for the appellee.

1. A "phantom" trademark is one in which an integral portion of the mark is generally represented by a blank or dashed line acting as a placeholder for a generic term or symbol that changes, depending on the use of the mark.

2. Application Serial Nos. 74/532,528 ("the '528 application") and 74/532,529 ("the '529 application"), respectively.

smoking tobacco articles, chewing gums, oral care products and beverages in International Class 30.

In both applications, the "XXXX" served to denote "a specific herb, fruit, plant or vegetable." The '528 application included a specimen showing the use of the mark "LIVING GREEN BELL PEPPER FLAVORS" and the '529 application included two specimens showing the use of the marks "LIVING STRAWBERRY FLAVOR" and "LIVING CILANTRO FLAVOR."

Later in 1994, IFF filed Application Serial No. 74/591,331 ("the '331 application") seeking to register "LIVING XXXX" for use in connection with

> non-synthetic and synthetic flavor substances for use in the manufacture of colognes, cosmetics, hair preparations, toiletries, detergents, fabric softeners, odorants, deodorants, bleaches, brighteners and air fresheners, in Class 1; and essential oils for use in the manufacture of colognes, cosmetics, toiletries, hair preparations, detergents, fabric softeners, odorants, deodorants, bleaches, brighteners and air fresheners in Class 3.

The "XXXX" placeholder indicated "a botanical or extract thereof, to wit: 'flower', 'fruit', 'yellow sunset orchid', 'osmanthus', 'fragrance', 'raspberry' and the like." The application included the following specimens: "LIVING FLOWERS," "LIVING MINT," "LIVING FRAGRANCE," "LIVING FRUIT," "LIVING OSMANTHUS," and "LIVING RASPBERRY."

The trademark examining attorney rejected registration of the marks because the specimens did not match the marks depicted in the specimens, *i.e.*, the specimens did not have an "XXXX" element. IFF then entered disclaimers for the

terms "FLAVOR" and "FLAVORS"[3] and amended the applications to add that "the 'XXXX' designations are themselves not part of the mark." IFF offered to replace the "XXXX" designation with broken lines, the PTO's preferred method for indicating a missing element in a trademark registration under 37 C.F.R. § 2.51(d) (1998). The examining attorney issued a final rejection denying the registration and IFF appealed to the Board.

In its opinion, the Board stated that under *In re ECCS, Inc.*, 94 F.3d 1578, 39 USPQ2d 2001 (Fed.Cir.1996), IFF would be able to amend the submitted drawings to conform with the specimens. The Board noted, however, that amendment of the drawings was not the real issue in the rejection; the crux of the matter was that the "applicant wishes to protect, in three registrations ... an unknown number of marks." *In re International Flavors & Fragrances*, 47 USPQ2d at 1317. The Board recognized that trademark examining attorneys had taken contrary positions as to the registerability of marks which contain "phantom" elements and that there was no formal PTO policy concerning the registerability of "phantom" marks. *See id.* However, the Board stressed the importance of "applicants to place all on notice of the precise mark(s) being sought to be registered" and that:

> to the extent that any mark sought to be registered has an omitted word or other element, conducting a complete and thorough search is extremely difficult.... A comprehensive search for all or even most permutations of applicant's marks is next to impossible. Applicant's definition of the phantom elements in these cases is extremely broad and may include any herb, fruit, plant or vegetable, in addition to other descriptive adjectives.

*Id.* at 1317–18. The Board concluded that anyone conducting a search of IFF's phan-

---

**3.** In its amendment to the '528 application, IFF stated that "[n]o claim is made to the exclusive right to use **FLAVORS** apart from the mark as shown."

tom mark would be unable to determine the entire scope covered by such marks and would be unable to ascertain the designation used to identify and distinguish the goods covered by the mark. *See id.* It also noted that no uniform PTO policy or guideline permitted the registration of "phantom" marks. *See id.* at 1317. The Board affirmed the examining attorney's final rejection of all three registration applications. *See id.* at 1318. Now before us is IFF's appeal of the Board's decision affirming the final rejection of the three applications for the "phantom" marks.

## DISCUSSION

### A. Standard of Review

■ We review the Board's legal conclusions, such as its interpretation of the Lanham Act, 15 U.S.C. § 1051, *et seq., de novo.* We uphold the Board's factual findings unless they are arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. *See Dickinson v. Zurko,* —— U.S. ——, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (holding that scope of review of PTO's findings is subject to Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*). We recognize that there are distinctions between the standards of review set forth under the APA. The Supreme Court in *Zurko* left undecided which standard, "arbitrary, capricious, abuse of discretion" or "substantial evidence," must be applied to review Board findings. This, however, is not the case in which to make that determination. The Board's present findings of fact would be upheld under any of the APA standards of review.

### B. Arguments Concerning Registerability of "Phantom" Marks

This is a case of first impression. IFF argues that it has a property interest in

the marks at issue and that the PTO's refusal to register IFF's marks deprives IFF of property without due process in violation of the Fifth Amendment. IFF further argues that the PTO has granted registration to "phantom" marks in the past and continues to grant registration to such marks, and that the PTO has no statutory or regulatory basis for granting or denying "phantom" marks; therefore, the Board's decision to affirm the examining attorney's final rejection denies IFF equal protection under the laws as provided by the Fifth Amendment.

The Commissioner of Patents and Trademarks ("the Commissioner") argues that IFF seeks to obtain registration of an unlimited number of marks in the applications at issue; however, under the Lanham Act, a trademark application may obtain registration of only a single mark in any one application. The Commissioner also notes that IFF's applications are for use-based marks but the applications are written in sufficiently broad terms such that not all of the potential variations of the marks covered by the "phantom" elements are in use. The Commissioner further argues that if the marks depicted in the three applications were granted registration, the public would not have adequate notice of all marks encompassed within IFF's applications and that the Board correctly determined that the missing "phantom" elements are so broad that it would be impossible to determine all the combinations and permutations of the marks. Finally, the Commissioner asserts that IFF was not denied due process or equal protection because IFF's applications received complete examination in accordance with PTO procedures and IFF had the opportunity to respond to all PTO actions. The Commissioner argues that prior decisions of examining attorneys do not establish PTO policy and are not binding on the Board or on this court.[4] Each application

---

4. When asked at oral argument if there

should be a PTO policy prohibiting the regis-

is considered on its own merits, and absent any PTO policy concerning "phantom" marks, IFF cannot demonstrate that the Board discriminated against it.

## C. Analysis

We agree with the Commissioner that under the Lanham Act and the rules promulgated thereunder, a trademark application may only seek to register a *single* mark. *See, e.g.,* 15 U.S.C. § 1051 (1994) ("The owner of *a trademark* ... may apply to register his or her *trademark* under this chapter on the principal register established: ... (3) By complying with such rules or regulations, not inconsistent with law, as may be prescribed by the Commissioner.") (emphasis added). The language of the relevant regulations also contemplate that an application may seek to register only a single mark. *See, e.g.,* 37 C.F.R. § 2.51(a)(1) (1998) ("In an application under section 1(a) of the [Lanham] Act, the drawing of *the trademark* shall be a substantially exact representation of *the mark* as used on or in connection with the goods ....") (emphasis added). Furthermore, the PTO's own trademark prosecution guidelines make clear that "[t]here may not be more than one mark on a drawing, since an application *must be limited to one mark.*" U.S. Patent and Trademark Office, Trademark Manual of Examining Procedure § 807 (2d ed.1993 rev. 1.1 Aug. 1997) (emphasis added). Although the Manual does not have the force of law, it "sets forth the guidelines and procedures followed by the examining attorneys at the PTO." *West Fla. Seafood, Inc. v. Jet Restaurants, Inc.,* 31 F.3d 1122, 1127 n. 8, 31 USPQ2d 1660, 1664 n. 8 (Fed.Cir.1994); *cf. Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1257, 43 USPQ2d 1666, 1669 (Fed.Cir.1997) ("[T]he

Manual of Patent Examining Procedure (MPEP) ... does not have the force of law, [but] is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates."). The Board found that IFF sought to register multiple marks in each of its registration applications at issue. *See In re International Flavors & Fragrances,* 47 USPQ2d at 1317. There is no reason for us to disturb this finding; therefore IFF's applications violated the one mark per application requirement of the Lanham Act.

As important as what is implied in the language of the Lanham Act and the corresponding regulations is the clear policy behind federal registration of trademarks. The federal registration of a trademark does not create an exclusive property right in the mark. The owner of the mark already has the property right established by prior use. The mark identifies and distinguishes the owner's goods from others. It also signifies the source and quality of the goods. These attributes are not established or granted by federal registration of the mark.[5] The owner of a trademark need not register his or her mark in accordance with the Lanham Act in order to use the mark in connection with goods or to seek to prevent others from using the mark. *See In re Beatrice Foods Co.,* 57 C.C.P.A. 1302, 429 F.2d 466, 472, 166 USPQ 431, 435 (1970) ("Rights appurtenant to the ownership of a federal trademark registration ... may be considered supplemental to those recognized at common law, stemming from ownership of a trademark."). However, those trademark owners who register their marks with the PTO are afforded additional protection not provided by the common law. *See id.* For example, the Lanham Act provides a federally registered trademark

---

tration of "phantom" marks, the solicitor arguing on behalf of the Commissioner stated that there should be such a policy.

5. A trademark owner could, in the alternative, seek to register his or her mark pursuant to various state laws which provide other legal protections.

owner a forum in federal court in which to adjudicate infringement claims, *see* 15 U.S.C. § 1121 (1994), and it allows, in certain cases, a registrant whose mark has been infringed to seek costs, treble damages, attorneys fees, *see id.* § 1117; the destruction of infringing articles, *see id.* § 1118; and the ability to prevent the importation of infringing goods, *see id.* § 1124. These additional protections are granted by the Lanham Act to encourage trademark owners to register their marks with the PTO. As our sister circuit has explained:

> [r]egistration of a trademark, in addition to serving the interests of the registrant by providing constructive notice, serves the interests of other participants in the market place. Entrepreneurs, for example, who plan to promote and to sell a new product under a fanciful mark, *should be able to rely on a search of the trademark registry* and their own knowledge of whether the mark has been used so that what may be substantial expenditures of money promoting the mark will not be wasted. Consumers are also benefitted by the registration of national trademarks, because such registration helps to prevent confusion about the source of products sold under a trademark and to instill in consumers the confidence that inferior goods are not being passed off by use of a familiar trademark. In short, therefore, the benefits of prior registration under the Lanham Act are justified in light of the order such registration brings to the market place.

*Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1395, 225 USPQ 1104, 1111–12 (3d Cir.1985) (emphasis added) (citing *Weiner King, Inc. v. The Wiener King Corp.,* 615 F.2d 512, 523–24, 204 USPQ 820, 830–31 (CCPA 1980)). We have recognized that:

> [t]he primary purpose of the Trademark Act of 1946 is to give Federal procedural

augmentation to the common law rights of trademark owners – which is to say legitimate users of trademarks. One of the policies sought to be implemented by the Act was to encourage the presence on the register of trademarks of as many as possible of the marks in actual use so that *they are available for search purposes.*

*Bongrain Int'l Corp. v. Delice de France, Inc.,* 811 F.2d 1479, 1485, 1 USPQ2d 1775, 1779 (Fed.Cir.1987) (emphasis added).

■ It is well established, as noted above, that the purpose of a trademark is to distinguish goods and to identify the source of goods. *See* 15 U.S.C. § 1127 (a trademark is "any word, name symbol, or device ... used by a person ... to identify and distinguish his or her goods ... from those manufactured or sold by others and to indicate the source of the goods"); *BellSouth Corp. v. DataNational Corp.,* 60 F.3d 1565, 1569, 35 USPQ2d 1554, 1557 (Fed.Cir.1995) ("The primary function of a trademark is to identify and distinguish the goods or services of one source from those sold by all others, although this may be accomplished anonymously."). By providing notice to potential users of the same or a confusingly similar mark, federal registration promotes the purposes of trademark law. Registration serves as constructive notice to the public of the registrant's ownership of the mark, *see* 15 U.S.C. § 1072, and thus prevents another user of the mark from claiming innocent misappropriation as a trademark infringement defense. *See Beatrice Foods,* 429 F.2d at 472, 166 USPQ at 435 ("[T]he constructive notice provision of § 22 of the Lanham Act (§ 15 U.S.C. 1072), takes away from future users of the mark registered the defense of innocent appropriation."); *see also Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1123 (6th Cir.1996) ("After registration, there can be no new 'innocent' users, and even an innocent prior user

cannot expand the area of its use, because Lanham Act registration puts all would-be users of the mark (or a confusingly similar mark) on constructive notice of the mark."). Federal registration provides a useful means for the public to provide enhanced legal protections to a common law property right in exchange for protection of the public against palming off and misrepresentation in the market place.

In order to make this constructive notice meaningful, the mark, as registered, must accurately reflect the way it is used in commerce so that someone who searches the registry for the mark, or a similar mark, will locate the registered mark. "Phantom" marks with missing elements, especially those sought to be registered by IFF, encompass too many combinations and permutations to make a thorough and effective search possible.[6] The registration of such marks does not provide proper notice to other trademark users, thus failing to help bring order to the marketplace and defeating one of the vital purposes of federal trademark registration.

 Finally, we agree with the Commissioner that IFF has not been denied due process or equal protection. IFF was provided a full opportunity to prosecute its applications and to appeal the examining attorney's final rejections to the Board. The Board fully considered IFF's arguments and affirmed the rejection in a detailed written decision setting forth the reasons for the rejection. More importantly, IFF has not demonstrated that it has a constitutionally protected property interest in obtaining federal registration of its "phantom" marks. There is no constitutionally protected right to federal regis-

tration of any mark. IFF may still use the marks to identify its goods and IFF still retains all common law rights associated with trademark use and ownership. Furthermore, IFF was not denied equal protection. Each application for trademark registration must be considered on its own merits. *See In re Loew's Theatres, Inc.* 769 F.2d, 764, 769, 226 USPQ 865, 869 (Fed.Cir.1985). The examining attorney and the Board provided explicit reasons why the three applications were denied registration, including, among other reasons, the inability to provide the public with exact notice of the mark's content and the difficulty or even impossibility of conducting a thorough search of IFF's marks if they were to be granted registration. Absent any prior PTO policy concerning the registration of "phantom" marks, IFF cannot demonstrate that it was discriminated against by the PTO.

## CONCLUSION

Because we hold that under the Lanham Act, a trademark registrant may seek to register only a single mark in a registration application, and trademark applications seeking to register "phantom" marks violate the one mark per registration requirement, the decision of the Board is

*AFFIRMED.*

## COSTS

Each party to bear its own costs.

---

**6.** As an example set forth by the Commissioner in his brief, suppose IFF begins using LIVING SPICE FLAVOR. However, since IFF seeks only to register LIVING XXXX FLAVOR, it is very possible that a potential trademark holder wanting to use LIVELY SPICE would not locate IFF's registration while do-

ing a trademark search and therefore would not be on notice that LIVELY SPICE might infringe IFF's mark. The analysis of any likelihood of confusion between these two marks must take into account all elements of the mark. *See In re Shell Oil Co.*, 992 F.2d 1204, 1206, 26 USPQ2d 1687, 1689 (Fed.Cir.1993).