2/14/01

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

Paper No. 16
HWR

UNITED STATES PATENT AND TRADEMARK OFFICE
————

Trademark Trial and Appeal Board
————

In re The Upper Deck Company
————

Serial No. 75/064,130
———

Paul F. Kilmer and Stephen J. Jeffries of Gadsby & Hannah
LLP for The Upper Deck Company.

Meryl L. Hershkowitz, Managing Attorney, Law Office 113.
———

Before Simms, Seeherman and Wendel, Administrative
Trademark Judges.

Opinion by Wendel, Administrative Trademark Judge:

The Upper Deck Company has filed an application to

register the mark depicted below for "trading cards."[1]

---

[1] Serial No. 75/064,130, filed February 21, 1996, claiming a date
of first use and first use in commerce of May 30, 1988.

The mark is described as follows:

> The mark consists of a hologram device which is applied to the goods, trading cards. The mark is discrete from and does not constitute a part of the subject matter of the trading card. Neither the size nor the shape of the hologram device, nor any content which may be represented within the hologram device, nor the positioning of the hologram device on the trading card are claimed as features of the mark.

The drawing is lined for the color silver, but color is also not claimed as a feature of the mark.

Registration has been finally refused under Section 1, 15 U.S.C. § 1051, of the Trademark Act on the ground that applicant is seeking to register more than one mark. Registration has also been finally refused under Sections 1, 2, and 45, 15 U.S.C. §§ 1051, 1052, and 1127, of the Trademark Act on the ground that the proposed mark does not function as a trademark.

The refusals have been appealed and both applicant and the Examining Attorney have filed briefs.[2] No oral hearing was requested.

### Seeking to Register More Than One Mark

The Examining Attorney bases this refusal on the recent holding of our principal reviewing court in In re International Flavors & Fragrances Inc., 183 F.3d 1361, 51

---

[2] The application was reassigned to the Managing Attorney for preparation of the Examining Attorney's brief. For purposes of this opinion, we have used the term Examining Attorney to refer to both the prior Examining Attorney and the Managing Attorney.

USPQ2d 1513 (Fed. Cir. 1999) that, under Section 1 of the Trademark Act and the rules promulgated thereunder, a trademark application may only seek to register a single mark.  Here, as she points out, the description of the mark identifies the mark as a hologram device, in any size, shape, content or position on the trading card.  The mark as shown on the specimens of record covers a variety of shapes, such as a baseball field, a racing flag, a star, a diamond and others, in various sizes and positions on the cards, most of which appear to have the words UPPER DECK embedded in the hologram.  Thus, the Examining Attorney argues, applicant is seeking to register an unknown number of marks in this one application.

    The Examining Attorney likens the present situation to that in *In re International Flavors, supra,* in which the Court found applications seeking to register LIVING XXXX FLAVORS and LIVING XXXX FLAVOR (with the XXXX intended to represent a specific herb, fruit, plant or vegetable), along with LIVING XXXX (with the XXXX intended to represent a botanical or extract thereof), to be in violation of the one mark per application requirement of the Lanham Act. She argues that similar to the "phantom marks" in that case and to the multiple likenesses or images of Elvis Presley involved in In re Elvis Presley Enterprises, Inc., 50

USPQ2d 1632 (TTAB 1999), the hologram designs which

applicant is seeking to register constitute more than one

mark.  The Examining Attorney contends the present

application is even more "problematic" than the other cases

in that:

> Here, not just a few words may be changed in
> any particular mark, and not just one individual
> in different poses is displayed, but other
> significant elements such as size, shape, content
> and position are variable. ... By disregarding
> the shape, size, positioning and content of the
> hologram, applicant is in effect claiming any
> hologram on a trading card as its mark, making it
> impossible for the public or the examining
> attorney to know what elements make up
> applicant's mark.  Moreover, allowance of such a
> mark would effectively grant applicant a monopoly to
> bar any one else from using a hologram as a mark on a
> trading card.    (Brief, p. 7).

The Examining Attorney also points to the problem of

notice to the public or to the Examining Attorney as to the

elements which actually comprise the mark or the commercial

impression created thereby.  She notes the difficulty of

the Examining Attorney in performing an adequate search of

the mark without any indication of the particular design of

the hologram.

Applicant insists, on the other hand, that the matter

it describes as its mark falls squarely within the

definition in Section 45 of the Trademark Act of a

"trademark" as "any... device... used by a person... to

identify and distinguish his or her goods... from those manufactured or sold by others and to indicate the source of the goods... ." Applicant contends that its mark is a single "device," namely a hologram, and that "[p]erception of the recognizable physical and visual properties of a hologram is not dependent upon the size or shape of the hologram, or by the particular place where the hologram is affixed to the goods." (Brief, p. 4).

Applicant relies upon the Supreme Court's observation in Qualitex Co. v. Jacobson Products Co., Inc., 514 U.S. 159, 34 USPQ2d 1161 (1995) that "[s]ince human beings might use as a "symbol" or "device" almost anything at all that is capable of carrying meaning, this language [Section 45], read literally, is not restrictive." It is because of this, applicant argues, that a color, a scent, and a sound have qualified as "trademarks," and it is because of this that applicant's single device of a hologram appearing on the face of a trading card qualifies as a "trademark."

Applicant argues that, unlike the phantom marks involved in In re International Flavors, there is no missing element in its mark. The carved-out elements, such as size or shape, according to applicant, are not changeable features or even part of its mark; the only device for which registration is sought is the presence of

a hologram.   Applicant argues that the *Elvis Presley* case

is similarly distinguishable, in that there the unspecified

and variable images of Elvis were part of the mark, whereas

here the variable elements are not part of the mark sought

to be registered.

Insofar as notice is concerned, applicant argues that

the nature of its mark is clearly set forth in the

description of the mark and the public would understand

what a hologram is.   Applicant insists that since the

Examining Attorney included the statement in her first

action that no similar marks had been found, a search for

conflicting marks was in fact possible.

We find the Court's holdings in *In re International*

*Flavors* fully applicable here.   The Court succinctly stated

that an application must be limited to one mark.   The Court

went on to note the function of registration as

constructive notice to the public of a registrant's

ownership of a mark and that

> [i]n order to make this constructive notice
> meaningful, the mark, as registered, must
> accurately reflect the way it is used in commerce
> so that someone who searches the registry for
> the mark, or a similar mark, will locate the
> registered mark.

51 USPQ2d at 1517. Thus, the Court found that "phantom" marks with missing elements cover too many combinations and permutations to allow an effective search of the register.

We find applicant's present attempt to register a hologram which may have a myriad of shapes, sizes, contents and the like to encompass an even larger number of combinations than the XXXX-containing word marks in *In re Interational Flavors.* The specimens themselves show the varying commercial impressions created by the holograms as used on the trading cards. The design may be a baseball field, a racing flag, or whatever applicant adopts for that particular card. The constructive notice which the Court found fundamental to federal registration would be virtually non-existent were applicant permitted to register "a hologram" as applied to trading cards.[3] While applicant may argue that there are no missing or changeable elements in its mark as described, there are clearly missing or changeable elements insofar as the images presented to the public are concerned.

We find strong similarities here to *In re Elvis Presley*, supra, wherein the applicant sought to register

---

[3] In response to applicant's argument that a search was made by the Examining Attorney, we simply note that the Examining Attorney was concurrently requiring the limitation of the description of the mark to the baseball field design shown on the drawing and obviously searched this design only.

for use on fabric "the likeliness and image of Elvis Presley" in all possible permutations, without limitation as to age, pose, or the like. Here as in *Presley,* applicant is attempting to register an idea or concept, rather than a single mark. In the *Presley* case the applicant wished to register all likenesses of a particular person, regardless of the appearance of that person or the specific pose, so long as it was that particular person. Here applicant wishes to register the presence of a hologram on a trading card, regardless of the physical attributes such as shape or position of the hologram, other than being a hologram.

In the *Presley* case we rejected the attempt to claim the likeness of Elvis Presley in general as a single mark. Here we reject the attempt by applicant to register the presence of a hologram in general as a single mark. We do not accept applicant's argument that "a hologram" is a single "device" under Section 45 of the Trademark Act. "A hologram" is not the same as "a color", or "a sound," or "a scent". Each of the latter, as registered, is further defined, e.g., a particular color or hue (a green-gold color in the *Qualitex* case); a particular sound (the sound made by a Ship's Bell Clock in In re General Electric Broadcasting Co. Inc., 199 USPQ 560 (TTAB 1978); a

particular scent (a floral fragrance reminiscent of Plumeria blossoms in In re Clarke, 17 USPQ2d 1238 (TTAB 1990).

We find that applicant's "hologram," without further definition, constitutes more than one "device" as contemplated by Section 45. Accordingly, we affirm the refusal to register on the ground that applicant is seeking to register more than one mark, which is prohibited under Section 1 of the Trademark Act.

<u>Proposed Mark Does Not Function as a Mark</u>

While our affirmance of the preceding refusal is sufficient to bar registration, in the interests of completeness, we consider the refusal based on the ground that the matter sought to be registered does not in fact function as a mark. In doing so, we note that there were many irregularities during the examination process with respect to this ground. The original Examining Attorney confusingly intertwined the terms "does not function as a mark" and "functionality" throughout her arguments and incorrectly refused to give any consideration whatsoever to the Section 2(f) evidence which applicant submitted in connection with this refusal. On review of the entire record, however, we believe that applicant was on notice as

to the true nature of the refusal[4] and was aware that de jure functionality was not an issue. Moreover, applicant argued the significance of its Section 2(f) evidence in its brief, the present Examining Attorney took the evidence under consideration in her brief, and applicant had an opportunity to respond thereto in its reply brief. Accordingly, we consider the issue fully briefed and ready for decision.

The Examining Attorney maintains that the hologram device that applicant seeks to register fails to function as a trademark, in that it neither identifies nor distinguishes the goods of applicant from those of others nor serves to indicate the source thereof. Sections 1, 2, and 45 of the Trademark Act. She argues that there is no evidence of record which shows that the public would perceive any hologram, regardless of content or design, used on a trading card as an indication that applicant is the source thereof. She relies upon NEXIS evidence made of record during examination showing that other companies use hologram devices on trading cards, as well as on other products such as credit cards, CDs, apparel, and various

---

[4] In applicant's response of December 3, 1998, applicant separately argued the "Refusal on Grounds that the Mark is not a Mark," as well as the "Functionality" issue.

types of tickets.  She cites the most frequent reason for the use of holograms, namely, as anti-counterfeiting devices, and notes the NEXIS evidence made of record to demonstrate use for this purpose.  As further evidence of this type of use of a hologram, she points to the declaration of Martin Welling, which has been submitted by applicant.  Mr. Welling acknowledges that applicant's "trademark hologram, in addition to functioning as a source indicator of applicant's goods, also serves to inhibit the production of counterfeit goods...," although he goes on to enumerate other anti-counterfeiting techniques that are available to applicant's competitors in the trading card field.

Applicant asserts that the evidence which it submitted in support of its claim of distinctiveness clearly shows that applicant's hologram functions as, and has come to be perceived in the relevant marketplace as, applicant's source indicator. (Response of Dec. 3., 1998) (Brief, p. 6) (Reply brief, p. 5-7).  In particular, applicant points to advertising copy referring to its "trademark hologram"; to four letters from consumers, which applicant characterizes as "unsolicited customer testimonials"; to its high sales and advertising figures; and to the statement made by Martin Welling in his declaration that although other

manufacturers of trading cards use holograms in the "representation of the graphic content of their trading cards," he was "unaware of any other maker of trading cards that uses a hologram as its trademark." (Declaration, par.4).

In response to the Examining Attorney's argument that the hologram functions as an anti-counterfeiting device, applicant contends that this function does not "undermine" the concurrent functioning of its hologram as a trademark. Applicant goes so far as to contend that "every trademark is an anti-counterfeiting device, designed to assure the purchaser that the goods come from the desired source." (Response of Dec. 3, 1998, p. 6).

As previously noted, the evidence submitted by applicant under a claim of acquired distinctiveness is relevant to the refusal of the failure of applicant's unspecified "hologram device" to function as a mark and thus has been considered. Upon consideration, however, we find the evidence insufficient to establish that consumers would perceive the mere presence of a hologram on a trading card, and not in connection with the design, location, content or other characteristics of any particular hologram, as a trademark. Although applicant has submitted a large amount of advertising copy in which the presence of

a hologram on the cards is touted, this promotion is directed for the most part to the presence of a hologram as a desirable feature of the cards, not as a trademark. While applicant frequently refers in its advertising to the fact that its cards are "holograpically enhanced," this promotion is simply as one more feature of its cards, along with items such as "tamper resistant foil packaging" and "in-your-face photography."  Even in those instances in which reference is made to the "trademark hologram," such as "the Upper Deck trademark hologram means it's the real thing," the inference is that the presence of a hologram per se insures a genuine (non-counterfeit) product, not that it serves as a source indicator for the cards.

The four unsolicited letters from customers only reinforce our opinion that there is no recognition of the mere presence of holograms on the cards as a trademark, rather than as a feature of the cards.  The suggestions in these letters for new hologram designs or new series in which a hologram is present constitute evidence of no more than the fact that consumers are aware that applicant's trading cards include, as an element thereof, a hologram. We agree with the Examining Attorney that these suggestions for new hologram designs "cannot be interpreted as meaning that these consumers recognize that any hologram device ...

13

would be a source indicator simply because they recognize that applicant applies holograms to trading cards." (Brief, p. 15).

The sales and advertising figures for applicant's trading cards per se are equally unconvincing. While sales figures may be indicative of the commercial success of applicant's products, they do not demonstrate that the holograms used thereon have acquired distinctiveness as an indication of the source of the cards. See In Pingel Enterprise Inc., 46 USPQ2d 1811 (TTAB 1998). Promotional and advertising expenditures for the cards per se are similarly unconvincing without concurrent evidence of promotion of the hologram device as a trademark.

We find the circumstances here similar to prior cases which have found an absence of evidence of the promotion and consequent recognition by the public of the designation sought to be registered as a trademark. See In re Edward Ski Products, Inc., 49 USPQ2d 2001 (TTAB 1999)(no evidence that configuration of ski mask either promoted or recognized by purchasers as an indication of origin); In re Bennetton Group S.p.A., 48 USPQ2d 1214 (TTAB 1998)(evidence insufficient to show that green rectangle background design promoted in and of itself or recognized by purchasers as trademark for clothing items to which it is applied); In re

14

Pingel Enterprise Inc., *supra,* (absence of advertising or promotion of trademark significance of product configuration makes consumer recognition as trademark unlikely). Here, not only is there minimal evidence that applicant has promoted the presence of a hologram per se on its trading cards, regardless of design or content, as an indication of origin, but, even more significantly, there is no competent evidence of consumer recognition of the hologram as a trademark.

Moreover, we have the counterbalancing effect of the similar use of holograms by competitors in the field. As pointed out earlier, evidence has been made of record showing the use by others of comparable hologram devices on trading cards. While applicant may argue that these are not trademark uses, the common use of holograms for non-trademark purposes means that consumers would be less likely to perceive applicant's uses of holograms as trademarks. Holograms in general have an anti-counterfeiting function; applicant has admitted that even its hologram serves this purpose. Furthermore, while applicant may argue that every trademark has an anti-counterfeiting function, the opposite is not true. Not every anti-counterfeiting device functions as a trademark. This is blatantly obvious from the evidence of record

showing common use of holograms on a variety of items for anti-counterfeiting and verification purposes, but not source identification.

Accordingly, we find that applicant has failed to establish that the mere presence of its hologram device, and not in connection with the design, location, content or other characteristics of any particular hologram, functions as a trademark for trading cards.

Decision:  The refusals to register under Section 1 on the ground that applicant is seeking to register more than one mark and under Sections 1, 2, and 45 on the ground that the hologram device of applicant fails to function as a trademark are affirmed.