3/11/02

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

Paper No. 15
ejs

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Ralph E. Hayes, Jr. and Gregory K. Clodfelter,
joint applicants
doing business as Alpha Consulting

————

Serial No. 75/554,641

————

Richard M. Moose of Dority & Manning, Attorneys At Law,
P.A. for Ralph E. Hayes, Jr. and Gregory K. Clodfelter,
joint applicants doing business as Alpha Consulting.

Teresa Rupp, Trademark Examining Attorney, Law Office 106
(Mary Sparrow, Managing Attorney)

————

Before Seeherman, Hohein and Walters, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Ralph E. Hayes, Jr. and Gregory K. Clodfelter, joint

applicants doing business as Alpha Consulting, seek

registration on the Supplemental Register for the design

shown below for "financial analysis and financial

management consultation services including summarizing

company performance data relative to determined standards

for use as a behavior modification tool."[1]



Applicants have offered a description of the mark as

follows:

> The mark consists of the colors red,
> green, and amber used as a color scheme
> for respective rectangular color blocks
> on reporting charts to correspond with
> performance ratings within selected
> categories of performance.  The drawing
> shows a representative pattern of the
> colors claimed but no claim is made to
> a particular pattern of the three
> colors.

It is this description which forms the basis of the

final refusal of registration.  The Examining Attorney

---

[1]  Application Serial No. 75/554,641, filed September 17, 1998, and asserting first use anywhere and first use of the mark in commerce as of May 1997.  Although originally filed on the Principal Register, the application was subsequently amended to the Supplemental Register to overcome a refusal that the colors sought to be registered failed to function as a mark.

asserts that this description is unacceptable because it encompasses more than one mark, and has therefore required an acceptable description of the mark limiting it to the single mark shown in the drawing.[2]

Applicants have appealed this requirement. The appeal has been fully briefed, but an oral hearing was not requested.

Applicants have explained that their asserted mark is a proprietary performance grid and performance chart. It is used in connection with their financial analysis and financial management consultation services as a tool for behavior modification. "[C]ompany performance data is summarized relative to determined standards. The standards themselves may be established in a performance grid.... The actual performance data relative to determined stands is summarized through the presentation of performance charts...." Response filed October 4, 1999.

Essentially, applicants use the applied-for grid as a chart to indicate whether performance standards are being met. The goals will vary depending on the particular

---

[2] The refusal that the design fails to function as a mark was withdrawn when applicant amended the application to the Supplemental Register. The question of whether the design is capable of indicating source was not raised by the Examining Attorney, and we therefore make no comment as to capability of the design shown in the drawing to function as a mark.

client and the client's needs.  For example, the specimens submitted with the application are a January 1998 performance chart for WENDY'S Mike LaRue Triad Restaurant Group, and list, for six different stores, such categories as "Same Store Sales Vs 1996"; "% Store Operating Income"; and "% Paper Cost".  Numbers are placed in the grid indicating the percentages for each category for each store, with squares in the grid colored green, amber or red, depending on the relationship between the figure and the goal.  As applicants acknowledge, "the resulting charts vary in use of the specific patterns due to corresponding variance of the data relative to determined standards." Id.

Because the charts which embody the applied-for mark not only will vary in color pattern, but are designed to vary, and because the description of the mark reflects this variation in pattern, the Examining Attorney asserts that applicants are seeking to register more than one mark, and thus the description is unacceptable.

We affirm the refusal to register on the basis that applicants' description of the mark is unacceptable in that it describes more than one mark.

Under the Lanham Act and the rules promulgated thereunder, a trademark application may only seek to

register a single mark. See **In re International Flavors & Fragrances Inc.**, 183 F.3d 1361, 51 USPQ2d 1513 (Fed. Cir. 1999), and authority cited therein.

The description of the mark submitted by applicants refers to more than one mark. It specifically states that "the drawing shows a representative pattern of the colors claimed but no claim is made to a particular pattern of the three colors." It is thus clear that applicants seek to register as a mark multiple marks, i.e., grids consisting of the colors green, amber and red in a wide variety of patterns. As the Examining Attorney pointed out, the commercial impressions of these patterns can vary widely, too, depending on the number of squares with a particular color, and the placement of the different colors. For example, a grid can consist of all green squares, with one red square and one amber square, or all red squares with one green and one amber, and so on. Or a grid can have alternating red, amber and green squares to form a checkerboard effect, or blocks of red, amber and green which look like a flag.

In **In re Elvis Presley Enterprises Inc.**, 50 USPQ2d 1632 (TTAB 1999), the applicant therein sought to register as a mark "the likeness and image of Elvis Presley." The Board found that a drawing consisting of such description,

which would include all of the different poses of Elvis Presley, encompassed more than one mark and was, therefore, unacceptable.

Applicants claim that the only applicability of the Presley case to the present application is the reference to prior authority regarding registration of one versus two marks, i.e., that in a single trademark application an applicant may not attempt to register two or more marks. Applicants go on to say that in this case only a single mark is sought to be registered because "the commercial impressions of any variations in the subject mark all fit within the characterization of the Description of the Mark." Brief, p. 6.

We disagree with applicants' statement that a mark should be considered as a single mark as long as all variations fit within the characterization of the description, and we disagree that the Presley case is applicable only for the proposition that an applicant may register only a single mark in an application. The Presley case dealt with a similar situation to that presented herein, namely, an applicant that wishes to register a variety of poses (in that case) or patterns (in this case) in a single application. In both cases, the various poses and/or patterns can convey very different commercial

impressions--of Elvis Presley at different ages and in different costumes and poses in the one case, and of different grid patterns, as indicated above, in the present case. The fact that applicants have provided a single description which reflects that the patterns of the grid can change does not avoid the fact that the description encompasses more than one mark, any more than "the likeness and image of Elvis Presley," a description which encompasses a variety of ages, poses and costumes of the man, could make this description into a single, registrable mark.

Applicants have submitted a number of third-party registrations[3] in support of their contention that prior United States Patent and Trademark Office ("Office") practice and statutory provisions allow for a "single mark" despite the potential for variation in that mark. Many of

_____

[3] Applicants originally submitted copies of pages from the Official Gazette showing the marks as they were published for opposition. The Examining Attorney noted in her brief that this evidence was not persuasive because there was no indication that the marks were ultimately registered. Applicants, with their reply brief, submitted copies of the registrations. Although technically untimely, we have considered this evidence because the Examining Attorney did not advise applicants, when the Official Gazette pages were originally submitted during the prosecution of the application, of the limited probative value of the Official Gazette listings, or that copies of the registrations were necessary.

these marks are for costumes, such as ballplayer uniforms, and applicants assert that marks such as these have variations depending on whether the player wearing the uniform mark is standing upright or in a prone position such as for sliding.  We do not find that these third-party marks are analogous to the present situation.  The Examining Attorney is not asserting that the description encompasses more than one mark because a particular grid can be viewed horizontally or vertically; her point is that the description encompasses more than one mark because the amount of each particular color and the placement of the colors can vary, and thus, the various patterns will create any number of different commercial impressions.  Similar comments apply to the third-party motion marks.

In any event, to the extent that there has been any inconsistency in Office practice with respect to such marks, that inconsistency has been put to rest with the Federal Circuit's decision in **In re International Flavors & Fragrances Inc.**, <u>supra</u>.  In that opinion the Court clearly stated that one of the primary purposes of federal registration is to provide notice to potential users of the same or a confusingly similar mark.  In order to make this constructive notice meaningful, the mark, as registered, must accurately reflect the way it is used in commerce so

that someone who searches the registry for the mark, or a similar mark, will locate the registered mark.  51 USPQ2d at 1517.

Although the Court was discussing the registration of "phantom" marks in that case, its reasoning applies to the present situation in which applicants are attempting to claim as their mark an unlimited number of pattern variations.  "Phantom" marks with missing elements encompass too many combinations and permutations to make a thorough and effective search possible.  The registration of such marks does not provide proper notice to other trademark users, thus failing to help bring order to the marketplace and defeating one of the vital purposes of federal trademark registration.

In the same manner, applicants' attempt to register all combinations and permutations of green, amber and red squares in a grid would make an effective search impossible.  Thus, even if the Office formerly had an inconsistent policy with respect to marks containing variations, that policy is now clear.

Decision:  The requirement for an acceptable description of the mark reflecting only the mark shown in the drawing of the application is affirmed.