This Opinion is a
Precedent of the TTAB

Mailed: August 15, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Douglas Wood*

————

Serial No. 88388841

————

Hillary A. Brooks of Brooks Quinn, PLLC for Douglas Wood.

Brian J. Pino, Trademark Examining Attorney, Law Office 114,
    Nicole Nguyen, Managing Attorney.

————

Before Adlin, Larkin, and English,
    Administrative Trademark Judges.

Opinion by Larkin, Administrative Trademark Judge:

Douglas Wood ("Applicant") seeks registration on the Principal Register of the proposed standard-character mark CHURCH BOY TO MILLIONAIRE for goods ultimately identified as "Books in the field of faith-based coaching, personal development, motivational and inspirational topics; books in the nature of memoirs; books about personal development; printed matter in the field of personal

development, namely, books, booklets, curricula, newsletters, magazines, printed periodicals" in International Class 16.[1]

The Examining Attorney refused registration of Applicant's proposed mark under Sections 1, 2, and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1125, on the ground that Applicant's proposed mark is the title of a single creative work and thus does not function as a trademark for any of the goods identified in the application.

When the Examining Attorney made the refusal final, Applicant appealed and requested reconsideration, which was denied. The case is fully briefed.[2] We affirm the refusal to register.

## I.    Background[3]

As noted above, Applicant filed this application based on his alleged bona fide intention to use the proposed mark in commerce in connection with the goods identified in the application. No substantive issues arose during prosecution of the application, and the application was published for opposition. When the application cleared the opposition period without challenge, Applicant received a Notice of

---

[1] Application Serial No. 88388841 was filed on April 16, 2019 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Applicant's allegation of a bona fide intention to use the mark in commerce. Applicant has disclaimed the exclusive right to use MILLIONAIRE apart from the mark as shown.

[2] Citations in this opinion to the briefs refer to TTABVUE, the Board's online docketing system. *See New Era Cap Co. v. Pro Era, LLC*, 2020 USPQ2d 10596, at *2 n.1 (TTAB 2020). The number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear. Applicant's appeal brief appears at 6 TTABVUE and his reply brief appears at 9 TTABVUE. The Examining Attorney's brief appears at 8 TTABVUE.

[3] Citations in this opinion to the application record are to pages in the Trademark Status & Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO").

Allowance and subsequently filed a Statement of Use supported by a specimen of use, which Applicant described as his "website showing use of [the] mark in association with goods at point of sale."[4] We reproduce below the pertinent portion of the specimen, which shows Applicant's proposed mark CHURCH BOY TO MILLIONAIRE in connection with what appear to be a copy of the book CHURCH BOY TO MILLIONAIRE and a copy of the Spanish-language version of the book under the title DE CHICO DE IGLESIA A MILLIONARIO:


[5]

The Examining Attorney issued an Office Action directed to the Statement of Use,[6] refusing registration on the ground that "the applied-for mark, as used on the specimen of record (1) is used only as the title of a single creative work, namely, the title of a specific book; and (2) does not function as a trademark to indicate the source

---

[4] October 18, 2021 Statement of Use at TSDR 1.

[5] *Id.* at TSDR 2.

[6] Under Section 1(d) of the Trademark Act, 15 U.S.C. § 1051(d), a Statement of Use submitted after the issuance of a Notice of Allowance is "[s]ubject to examination and acceptance" before any registration issues.

of applicant's goods and to identify and distinguish them from others."[7] Applicant responded to the Office Action and argued against the refusal,[8] but the Examining Attorney made the refusal final.[9]

Applicant appealed and simultaneously requested reconsideration. In his Request for Reconsideration, Applicant made of record an article entitled "The Translation Profession — A Science, An Art and A Skill,"[10] pages from the website of Meinrad Translation Localization Service discussing machine translation engines,[11] and pages from the website of BIT.AI Blog discussing the "7 Best Google Translate Alternatives for 2022."[12] The Examining Attorney subsequently denied Applicant's Request for Reconsideration.[13]

## II.    Title of a Single Work Refusal

### A.    Applicable Law

"The title of a single creative work, such as a book, is not considered to be a trademark, and is therefore unregistrable." *In re MCDM Prods., LLC*, 2022 USPQ2d 227, at \*2 (TTAB 2022) (citing Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§ 1051, 1052, and 1125, and *Herbko Int'l Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002) ("This court's precedent . . . clearly holds that

---

[7] December 7, 2021 Office Action at TSDR 1 (citations omitted).

[8] January 31, 2022 Response to Office Action at TSDR 2.

[9] February 28, 2022 Final Office Action at TSDR 1.

[10] August 29, 2022 Request for Reconsideration at TSDR 5-8.

[11] *Id.* at TSDR 9-11.

[12] *Id.* at TSDR 12-19.

[13] September 19, 2022 Denial of Request for Reconsideration at TSDR 1.

the title of a single book cannot serve as a source identifier.") (internal citation omitted)). "'[H]owever arbitrary, novel or nondescriptive of contents the name of a book — its title — may be, it nevertheless describes the book.'" *Id.* (quoting *In re Cooper*, 254 F.2d 611, 117 USPQ 396, 400 (CCPA 1958)). "The title of a single creative work is not registrable on either the Principal or Supplemental Register." *Id.*, at \*3 (citing *Herbko*, 64 USPQ2d at 1378).

In *MCDM Prods.*, the Board explained the policy behind this principle as follows:

> In addition to finding that the title of a single work does not act as an indicator of source, the Court of Customs and Patent Appeals found in *Cooper* that allowing registration of a title of a single work may create obstacles to the entry of copyrighted material into the public domain. "Unlike a copyright that has a limited term, a trademark can endure for as long as the trademark is used. Therefore, once copyright protection ends, and the work falls in the public domain, others must have the right to call the work by its name."

*MCDM Prods.*, 2022 USPQ2d 227, at \*3 n.2 (quoting *Cooper*, 117 USPQ at 400). "Moreover, if the work sought to be registered is not copyrighted, the public may copy it at once and would be as clearly entitled to call it by its name." TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") Section 1202.08 (July 2022).[14]

Single creative works, such as books, "'include works in which the content does not change.'" *MCDM Prods.*, 2022 USPQ2d 227, at \*3 (quoting *In re Innovative Cos.*,

---

[14] "'Although the [TMEP] does not have the force of law, it 'sets forth the guidelines and procedures followed by examining attorneys at the' USPTO." *In re Ala. Tourism Dep't*, 2020 USPQ2d 10485, at \*3 (TTAB 2020) (quoting *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 51 USPQ2d 1513, 1516 (Fed. Cir. 1999) (internal citation omitted)). Both Applicant and the Examining Attorney discuss sections of the TMEP regarding the titles of creative works, and some of the cases cited therein.

88 USPQ2d 1095, 1102 (TTAB 2008) (quoting TMEP Section 1202.08(a)). TMEP Section 1202.08(a) defines single creative works as follows: "Single creative works include works in which the content does not change, whether that work is in printed, recorded, or electronic form. Materials such as books, sound recordings, downloadable songs, downloadable ring tones, videocassettes, DVDs, audio CDs, and films are usually single creative works." TMEP § 1202.08(a) (citations omitted).

TMEP Section 1202.08(b) discusses what does not constitute a single creative work, and states, with respect to books, that

> [a] book with a second or subsequent edition in which the content changes **significantly** is not regarded as a single creative work. For example, a statement on the jacket cover that a cookbook is a "new and revised" version would indicate that it includes significant revisions. However, a new edition issued to correct typographical errors or that makes only minor changes is not considered to be a new work.

TMEP § 1202.08(b) (emphasis in bold here in italics in the original).

### B.    Summary of Arguments

Applicant argues that his specimen shows use of his proposed mark "on two separate books of two different titles, one titled <u>Church Boy to Millionaire</u> and the second, a Spanish language book titled <u>De Chico de Iglesia a Millonairo</u> [sic]." 6 TTABVUE 7. According to Applicant, he "has published two books of different titles which have been marketed under the same mark." *Id.* at 8.[15]

---

[15] Applicant's argument that his books have "been marketed under the same mark" is based on his "use of the mark on its [sic] website, particularly at the top left of the page . . . ." 6 TTABVUE 8. The Examining Attorney does not dispute the sufficiency of the specimen as a display associated with the goods, *see, e.g.*, *In re MN Apparel LLC*, 2021 USPQ2d 535, at \*14-17 (TTAB 2021), but instead argues that it displays one book with the same content in two

Applicant also argues that the Examining Attorney "erroneously views a translation of a book as identical to the book itself." *Id.* at 8-9. According to Applicant, CHURCH BOY TO MILLIONAIRE and DE CHICO DE IGLESIA A MILLONARIO "are not the same book," "do not have the same titles," and "are not interchangeable goods." *Id.* at 9. Applicant argues that translation "is not the type of inconsequential change such as a font change or file type where the content is unchanged." *Id.*

In Applicant's view, "[t]ranslation is an art or a science." *Id.* at 9. Applicant cites the article "The Translation Profession — A Science, An Art and A Skill,"[16] and argues that "the choice of translator, either human or machine, will have large impact on the version [of a work] that is created," *id.*, citing the websites of Meinrad Translation Localization Service,[17] and BIT.AI Blog.[18] *Id.*

Applicant further argues that translation "does not produce an identical work, and that at a minimum, the Spanish language work is a significantly changed version of the same work," and that TMEP Section 1202.08(b) "permit[s] registration of significantly different versions of a single work." *Id.* at 10. Applicant argues alternatively that he is entitled to registration of CHURCH BOY TO MILLIONAIRE for the books and other printed matter identified in his application even if he has

---

different languages, not two different books. The sufficiency of the format of the specimen of use is a separate issue from the basis for the refusal, which is that the proposed mark identifies the title of a single work.

[16] August 29, 2022 Request for Reconsideration at TSDR 5-8.

[17] *Id.* at TSDR 9-11.

[18] *Id.* at TSDR 12-19.

used the mark on only one work because he has also used the mark on "different goods or services" in other classes. *Id.* at 9-10.

The Examining Attorney responds that the "proposed standard character mark CHURCH BOY TO MILLIONAIRE is only being used as the title of [a] single work as shown on the specimen of record." 8 TTABVUE 3. He argues that

> the submitted specimen shows the applied-for mark CHURCH BOY TO MILLIONAIRE appearing in the top left corner of the specimen above the wording "GET THE BOOK TODAY" and on a book cover for English and Spanish language versions of the same book. The use of the proposed mark in the upper left hand corner of the specimen only shows use of the applied-for mark as the title of a single work because of the wording "GET THE BOOK TODAY" which limits the perception of the proposed mark CHURCH BOY TO MILLIONAIRE to the title of a book with the same name. The perception of the proposed mark in the upper left corner as the title of a book is also reinforced by the book shown immediately on the specimen. Therefore, the use of the proposed mark on the specimen in the upper left corner is only being used to indicate the title of the book also shown on the specimen. Moreover, there is no evidence in the application record that the applicant's book is part of a series of creative works such as a volume indicator on the book. Nor are there other specimens or evidence in the record otherwise showing proper trademark use of the applied-for mark for the identified goods. Therefore, consumers would view the applied-for mark as the title of a single work rather than as a trademark to indicate the source of applicant's goods and to distinguish them from the goods of others.

*Id.*

The Examining Attorney further notes that "[A]pplicant has not argued, or provided any evidence, that shows that the Spanish version of the English book has **content** that is significantly different than the English version of the book," and that "[A]pplicant appears to simply argue that because the Spanish version of the book is

not in English that the translation significantly changes the content." *Id*. at 4 (emphasis in bold here in italics in the original). The Examining Attorney acknowledges "that translating a work from English to another language changes the wording from one language to another," but argues that "the wording change does not significantly change the content." *Id*.

The Examining Attorney concludes that "unless the applicant can demonstrate, which it [sic] has not done to this point, that the **content** of the Spanish version of the book is something more than merely a translation of the English version of the same book, the applicant's argument should not be persuasive because the content of the Spanish version book is the same content as the English version book but expressed in a different language." *Id*. at 5 (emphasis in bold here in italics in the original).

In his reply brief, Applicant argues that

> [t]he central issues for this appeal can be identified as follows: 1) are an English language book and a Spanish translation bearing a different title a single work for purposes of trademark registration; and, if not, 2) is a translation a "second or subsequent edition in which the content changes significantly"; and, if not, 3) does use of a trademark on a book and a service constitute use on **more than a single creative work** for purposes of registration. Each of these should be answered in the affirmative and the specimen for the Applied-for-Mark should be allowed.

9 TTABVUE 2 (emphasis supplied by Applicant).

Applicant concludes that his "English and Spanish language versions appeal to different purchasers, i.e. English readers and Spanish readers," and that this fact "establishes that they are not identical content." *Id*. at 5.

## C.  Analysis of Refusal

The issue in this case is whether the Spanish-language version of Applicant's book, shown on the right below in his specimen



is a "second or subsequent edition" of Applicant's English-language book "in which the content [has] change[d] significantly." TMEP § 1202.08(b).[19] *See MCDM Prods.*, 2022 USPQ2d 227, at *3; *Mattel, Inc. v. Brainy Baby Co.*, 101 USPQ2d 1140, 1143 (TTAB 2011) (finding that live and animated materials for child development recorded on various media were "the same creative work" because "the addition of minor enhancements in the DVD does not transform this single work into a series."); *In re Posthuma*, 45 USPQ2d 2011, 2014 (TTAB 1998) (finding that a stage play was a single work notwithstanding changes made during live theatrical performances).

---

[19] Applicant's alternative argument that he is entitled to registration of CHURCH BOY TO MILLIONAIRE for the books and other printed matter identified in his application because he has also used the mark on "different goods or services" in other classes, 6 TTABVUE 9-10, is meritless. The use of the title of a single book "on collateral goods such as posters, mugs, bags, or t-shirts does not establish a series," TMEP § 1202.08(c), for the obvious reason that those goods are not books, and do not otherwise make the title registrable for books.

The TMEP instructs examining attorneys to "determine whether changes in content are significant based on any evidence in the application or record." TMEP § 1202.08(b). For the reasons discussed below, we agree with the Examining Attorney that Applicant has not "provided any evidence[ ] that shows that the Spanish version of the English book has content that is significantly different than the English version of the book." 8 TTABVUE 4.

Distilled to its essence, Applicant's position is that every translation of a work into a foreign language results in a significantly different work because "translation is an art or science which does not produce an identical work," and that Applicant's Spanish-language translation is ipso facto "a significantly changed version of the same work." 6 TTABVUE 10. Applicant relies on the third-party webpages in the record that discuss the nature of the translation of written materials from one human language into another, either by humans or machines, *id.* at 9,[20] and argues that the selection of a translator affects the translation. *Id.*

According to the article THE TRANSLATION PROFESSION – A SCIENCE, AN ART, AND A SKILL cited by Applicant, the objective of a translator is to "strike a balance between fidelity to the source text and readability in the target language," that a good translation is one that "read[s] as though it were written in the target language originally," and "[t]he best translation is the one that no one recognizes as a translation."[21] Applicant is surely correct that achieving those goals requires both

---

[20] August 29, 2022 Request for Reconsideration at TSDR 5-19.

[21] *Id.* at TSDR 7.

linguistic skill and cultural knowledge, but even assuming that the unidentified translator of CHURCH BOY TO MILLIONAIRE from English into Spanish employed such skills, this does not establish that Applicant's Spanish-language translation actually contains significantly different content from its English-language counterpart.

Applicant provides no evidence, from the translator or an exegesis of the texts of the two books, that DE CHICO DE IGLESIA A MILLONARIO differs in content at all, let alone significantly, from CHURCH BOY TO MILLIONAIRE. The only record evidence that possibly bears on that question is Applicant's specimen,[22] which does nothing to suggest that the books differ in content, but instead displays the respective versions next to links that allow visitors to GET **THE BOOK** TODAY (English-language version) (emphasis added) and GET **THE BOOK** TODAY IN SPANISH (Spanish-language version) (emphasis added), effectively confirming that the English- and Spanish-language versions of "THE BOOK" are one and the same in content.

In the absence of evidence that the books actually differ significantly in content, we are constrained to find that Applicant is selling the same book in English-language and Spanish-language versions, which is akin to selling a book in different media formats, and "[s]elling a book in different formats does not preclude a finding that the title names a single work." *MCDM Prods.*, 2022 USPQ2d 227, at *9 (citing *Mattel,* 101 USPQ2d at 1144 ("the LAUGH & LEARN program is promoted in respondent's catalogs as a single work that is available in both VHS and DVD

---

[22] During prosecution, the Examining Attorney made of record pages from Applicant's website at churchboytomillionaire.com, January 27, 2020 Office Action at TSDR 2-4, 13-16, but none of them displays or refers to DE CHICO DE IGLESIA A MILLONARIO.

formats"); *see also In re Appleby*, 159 USPQ 126, 127 n.1 (TTAB 1968) (finding that the title of a single phonograph recording was similar in nature to the title of a single book for purposes of eligibility for registration, and that "[t]he fact that applicant's recording is also available in the Spanish language is of no particular significance since 'HYPNO-SMOKE' as used thereon, performs the same function.")).

Applicant's categorical position that translation of a book always results in a significantly different work as a matter of law finds no support in the decisions of the Federal Circuit and the Board in cases on the registrability of titles of single works. To the contrary, the Board implicitly rejected such a per se rule in *Appleby* with respect to sound recordings, and there is nothing in the nature of books that supports, much less compels, a different analysis. If Applicant's position were adopted, the proposed exception for translations could swallow the rule that the title of a single work is ineligible for registration.

We hasten to add that in rejecting Applicant's categorical position, we are not holding that a translation could never result in a work that is significantly different in content from the translated work. We do not rule out the possibility that creating a translation could yield a "second or subsequent edition" of a book "in which the content [has] change[d] significantly." TMEP § 1202.08(b). There is simply no evidence in the record here that the Spanish-language version of CHURCH BOY TO MILLIONAIRE is such a work.

Because Applicant showed use of his proposed mark CHURCH BOY TO MILLIONAIRE in connection with only a single book (in English- and Spanish-

language versions), the Examining Attorney properly found, based on the specimen of record, that Applicant's proposed mark is not eligible for registration for the goods identified in the application.

**Decision**: The refusal to register is affirmed.