[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/07/99
THOMAS  K. KAHN
CLERK

No. 98-8097

D. C. Docket No. 1:95-cv-2445-JTC

WILHELM PUDENZ, GmbH,

Plaintiff-Counterclaim Defendant-Appellee,

versus

LITTLEFUSE, INC.,

Defendant-Counterclaim Plaintiff-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(June 7, 1999)**

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and NANGLE[*], Senior District Judge.

FAY, Senior Circuit Judge:

Defendant-Appellant Littlefuse, Inc. ("Littlefuse") appeals the district court's

order granting declaratory relief to Plaintiff-Appellee Wilhelm Pudenz GmbH

---

[*] Honorable John F. Nangle, Senior U.S.  District Judge for the Eastern District of Missouri, sitting by designation.

("Pudenz"), invalidating two of Littlefuse's federally registered trademarks, and denying Littlefuse's counterclaims against Pudenz based on those marks for unfair competition and unlawful importation of goods. On appeal, this case raises the following issue: whether a federally registered trademark that has achieved incontestable status may nonetheless be declared invalid based on the functionality doctrine. We hold that registered trademarks that have become incontestable under 15 U.S.C. § 1065 may still be declared invalid if they are found to protect the functional features of a product, and therefore AFFIRM.

## I. BACKGROUND

Littlefuse and Pudenz are both companies that manufacture and market, among other electronic devices, plug-in blade fuses for automobiles. Littlefuse and its licensees sell nearly 100% of the automotive blade fuses sold in the United States. Pudenz, a German company, has a significant share of the European market for automotive blade fuses and has started to enter the American market. Both companies market their fuses primarily to automobile and automobile parts manufacturers, but also sell fuses to aftermarket purchasers such as car owners.

As part of its product line, Littlefuse produces and markets an automotive fuse called the ATO blade fuse. At issue in this case are two of Littlefuse's registered trademarks associated with the marketing of this fuse. The first is the subject of U.S.

Trademark Registration Number 1,513,357 (the "'357 registration"), which covers the two-dimensional outline of the ATO fuse. The second is the subject of U.S. Trademark Registration Number 1,553,579 (the "'579 registration"), which covers the three-dimensional configuration of the ATO fuse housing. As the registrations show and Littlefuse's counterclaims make clear, both registrations seek to protect the configuration of the ATO fuse as trade dress. Both registrations have also achieved "incontestable" status pursuant to 15 U.S.C. § 1065.[1]

In 1995, Littlefuse sent Pudenz a cease and desist letter, alleging that the configuration of Pudenz's FKS and FK2 automotive blade fuses (the "FK fuses") infringed the registered trade dress of the Littlefuse ATO fuses as set forth in their trademark registrations. The letter demanded that Pudenz refrain from importing the FK fuses into the United States. In response, Pudenz initiated this lawsuit by filing a Complaint for a declaratory judgement that the FK fuses did not infringe any of Littlefuse's trademark rights. In its Answer, Littlefuse filed counterclaims against Pudenz and Pudenz's United States distributor, Wickmann USA, Inc. ("Wickmann"), for infringement of the ATO fuse trade dress as set forth in the '357 and '579 registrations, for federal unfair competition, and for unlawful importation under 15 U.S.C. § 1124 and 19 U.S.C. § 1526.

Littlefuse moved for summary judgment on its counterclaims. The district court denied the motion, holding (1) that functionality may be raised as a defense in actions based on incontestable trademark registrations; (2) that Pudenz established a genuine factual dispute as to the functionality of the ATO trade dress; and alternatively (3) that there was a genuine factual dispute as to the

---

[1] Under this provision of the Lanham Act, a trademark registration may become incontestable if and when the mark has been in continuous use for 5 years after the initial registration, there is no pending challenge to the validity of the mark, and the registrant files an affidavit with the Commissioner of Patents within one year after the expiration of the initial five-year period, affirming that the mark is still in use. 15 U.S.C. § 1065.

likelihood of confusion created by the configuration of the FK fuses. The case then proceeded to trial before the district court. On January 7, 1998, the court issued a Judgement and Order granting declaratory relief to Pudenz and denying Littlefuse's claims. After finding that both the individual features of the ATO fuse housing and the overall configuration of those features in the housing itself were functional, the court held and declared that this functionality rendered the '357 and '579 registrations invalid and unenforceable. In the alternative, the court held that even if the registrations were valid, the FK fuses did not infringe the trade dress of the ATO fuses.[2] Littlefuse filed timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

The applicability of the functionality doctrine to a trademark that is the subject of an incontestable registration is a question of law. As such, we review the district court's determination de novo. See McBride v. Sharpe, 25 F.3d 962, 968 (11th Cir. 1994).

## III. DISCUSSION

A. The Functionality Doctrine

The functionality doctrine is a judicially created rule that predates the Lanham Act. Under this rule, no trademark rights may be claimed in a product's functional shapes or features. 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 7:63 (4th ed. 1997); See Epic Metals Corp. v. Souliere, 99 F.3d 1034, 1038 (11th Cir. 1996)("A products features are

---

[2] The district court so held based on a finding that the configuration of the FK fuses did not create a likelihood of confusion. Because we affirm the invalidity of the trade dress based on the functionality doctrine, we need not address the merits of the claims based on those invalid trademarks.

4

protectible as trade dress if they are primarily non-functional."). This proscription serves two purposes. First, by ensuring that competitors remain free to copy useful product features, it prevents the trademark law from undermining its own pro-competitive objectives. Qualitex Co. v. Jacobson Products Co., Inc., 514 U.S. 159, 164, 115 S.Ct. 1300, 1304, 131 L.Ed.2d 248 (1995). Second, the functionality doctrine prevents the trademark law from conflicting with the patent law by eliminating trademark monopolies of potentially unlimited duration on a product's utilitarian features. Id., at 165.

This second rationale is particularly important. The federal government's power to grant patents flows from the Patent Clause of the Constitution. This clause grants Congress the power "to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive right to their respective writings and discoveries." U.S. Const. art. I, § 8, cl. 8. The Supreme Court has noted that this clause contains both a grant of power to the government, as well as a limitation upon that power. Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 146, 109 S.Ct. 971, 975, L.Ed.2d 118 (1989). Notably, the Patent Clause explicitly requires that the inventor's exclusive right, embodied in a granted patent, must be of a limited duration. Thus, the Constitution strikes a balance between the encouragement of innovation and the establishment of a public domain of freely available inventions to foster competition. Id.

The Supreme Court has explained the importance of this balance and the constitutional underpinnings of the public domain:

> The federal patent system thus embodies a carefully crafted bargain for encouraging
> the creation and disclosure of new, useful, and nonobvious advances in technology
> and design in return for the exclusive right to practice the invention for a period of
> years. "[The inventor] may keep his invention secret and reap its fruits indefinitely.
> In consideration of its disclosure and the consequent benefit to the community, the
> patent is granted. An exclusive enjoyment is guaranteed him for seventeen years, but
> upon expiration of that period, the knowledge of the invention inures to the people,

who are thus enabled without restriction to practice it and profit by its use." . . . The novelty and nonobviousness requirements of patentability embody a congressional understanding, implicit in the Patent Clause itself, that free exploitation of ideas will be the rule, to which the protection of a federal patent is the exception. Moreover, the ultimate goal of the patent system is to bring new designs and technologies into the public domain through disclosure.

Id., at 150-51 (citation omitted). The job of working out this balance is given to patent law, and not trademark law. Qualitex Co., 514 U.S. at 164, 115 S.Ct. at 1304. Consequently, when the operation of the Lanham Act would upset the balance struck by the Patent Act, the Lanham Act must yield. The functionality doctrine serves this purpose by eliminating the possibility of a perpetual exclusive right to the utilitarian features of a product under trademark law, which would be impossible (as well as unconstitutional) under the Patent Act.

Although the functionality doctrine is well established in the federal courts, it was never explicitly mentioned in the Lanham Act until recently. Instead, the courts have applied the rule as a matter of public policy. See McCarthy, supra, § 7:63. On October 30, 1998, Congress enacted the Trademark Law Treaty Implementation Act, Pub. L. No. 105-330, 112 Stat. 3064 (codified in scattered sections of 15 U.S.C. § 1051 et. seq.). The primary purpose of this legislation was to harmonize some aspects of the Lanham Act with foreign trademark laws, in order to carry out the provisions of international trademark treaties. Id., § 102. Congress also included in the Act a section, Title Two, entitled "Technical Corrections." This Title consists of § 201, which makes twelve various corrections to the Lanham Act. Among these changes are several that explicitly add the functionality doctrine to the relevant provisions of the Lanham Act. These changes became effective on the date of enactment, and so do not directly apply to the case at bar. We will examine them infra, however, when we discuss the operation of the incontestability provision of the Lanham Act.

6

B. Incontestability

After five years of continuous use, the Lanham Act allows the owner of a registered trademark to obtain incontestable status by filing an affidavit affirming that certain statutory requirements have been met. 15 U.S.C. § 1065. Once a registration has achieved incontestable status, it is treated as conclusive evidence of the registrant's right to use the trademark, subject to certain enumerated defenses. 15 U.S.C. § 1115(b). Thus, incontestability narrows, but does not eliminate, the grounds upon which the trademark's validity may be called into question by a defendant. These incontestability provisions allow a "registrant to quiet title in the ownership of his mark. The opportunity to obtain incontestable status by satisfying the requirements of § [1065] thus encourages producers to cultivate the goodwill associated with a particular mark." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 198, 105 S.Ct. 658, 663, 83 L.Ed.2d 582 (1985). Until the enactment of the Trademark Law Treaty Implementation Act, functionality was not one of the enumerated defenses to incontestability. Of course, functionality was not mentioned anywhere in the Lanham Act at that time.

C. Does the Functionality Doctrine Apply to a Product Configuration Whose Trademark Registration Has Become Incontestable?

In Park 'N Fly, the Supreme Court held that an infringement action based on an incontestable registration may not be defended against on the grounds that the registered mark is merely descriptive. Park 'N Fly, Inc., 469 U.S. at 205, 105 S.Ct. at 667. The Court reached this conclusion based on the fact that mere descriptiveness was enumerated as grounds to deny or cancel a trademark registration, but was not explicitly listed as a defense to incontestability. Id., at 196-97, 662. The Court also noted that Congress explicitly considered adding descriptiveness to the list of defenses against incontestability and chose not to. Id., at 201, 665. Littlefuse relies on the Fourth Circuit's enlargement of the Park 'n Fly holding in Shakespeare Co. v. Silstar Corp. of America, Inc.,

7

9 F.3d 1091 (4th Cir. 1993) to argue that because functionality was not an enumerated defense under § 1115(b), Pudenz cannot use the doctrine to attack or defend against its incontestable '357 or '579 registrations.

In Shakespeare, the Fourth Circuit construed Park 'N Fly as holding that an incontestable registration is not subject to cancellation based on any defense that is not explicitly enumerated in the incontestability provisions of the Lanham Act. Shakespeare Co., 9 F.3d at 1097. After analogizing the incontestability defense provisions of § 1115(b) to the cancellation provisions of § 1064[3], the Shakespeare court went on to hold that because it is not an enumerated ground for cancellation of a registered trademark over five years old under § 1064, a district court may not cancel such a registration based on functionality. Id. We decline to read Park N' Fly so broadly, and therefore disagree with the Fourth Circuit. The Supreme Court purposefully avoided holding that all non-enumerated defenses to incontestability were foreclosed, by declining to decide whether estoppel or laches (both non-enumerated defenses at that time) were available as defenses to an incontestable registration.[4] Littlefuse asks us to read the Supreme Court's holding as based on blind adherence to the canon of statutory construction known as expressio unius est exclusio alterius. This canon stands for the proposition that the mention of one thing implies the exclusion of the other. As this Court has explained, "this principle has its limits and exceptions and cannot apply when the

---

[3] This provision of the Lanham Act limits the grounds for cancellation of a federal trademark registration after the registration is five years old, regardless of whether the registration is incontestable. 15 U.S.C. § 1064. These limited grounds for cancellation are indeed similar to the defenses against incontestability. Significantly, the technical corrections section of the Trademark Law Treaty Implementation Act added functionality as an enumerated ground for cancellation after five years.

[4] The Court wrote, "We note, however, that we need not address in this case whether traditional equitable defenses such as estoppel or laches are available in an action to enforce an incontestable mark." Park 'N Fly, Inc., 469 U.S. at 203 n.7, 105 S.Ct at 666 n.7. At the time, neither defense was enumerated in the incontestability provisions of the Lanham Act. Subsequently, Congress amended the Act to include "equitable principles, including laches, estoppel, and acquiescence." 15 U.S.C. § 1115(b)(8).; Pub.L. 100-667, § 128(b)(5), (6).

8

legislative history and context are contrary to such a reading of the statute." United States v. Castro, 837 F.2d 441, 442-43 (11th Cir. 1988). The Supreme Court did not, however, rely solely on this canon.[5] Instead, the Court examined the text of the incontestability provision, its context within the Lanham Act, and the legislative history of the Act to determine that mere descriptiveness was intended to be eliminated as a defense against an incontestable trademark registration. When the holding of Park 'N Fly is properly framed, the case at bar is easily distinguished.

In Park 'N Fly, mere descriptiveness was explicitly listed elsewhere in the Lanham Act as a defense and a ground for cancellation, but it was absent from the list of defenses in § 1115(b). In contrast to the mere descriptiveness defense addressed in Park 'N Fly, functionality was not explicitly mentioned anywhere in the Lanham Act. This makes the application of expressio unius particularly inappropriate here. "[T]he maxim is inapplicable if there is some special reason for mentioning one thing and none for mentioning another which is otherwise within the statute, so that the absence of any mention of such other will not exclude it." Id., at 443 n.2 (quoting 82 C.J.S., Statutes, § 333, at 670). This reasoning is even more persuasive where the absent item is not "otherwise within the statute." Consequently, the mere fact that functionality is not enumerated in § 1115(b) is not sufficient to indicate congressional intent to eliminate the defense's applicability to incontestable registrations. Indeed, given the absence of any explicit reference to the functionality

---

[5] Indeed, courts rarely rely solely on this canon of statutory construction because it is subject to so many exceptions. As this Court has noted, expressio unius "is perhaps a rule honored more in the breach than in the observance." Id., at 443 n.2. Many commentators have noted the maxim's limited use:

Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. . . . Far from being a rule, [expressio unius] is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or not depends on the particular circumstances of context. Without contextual support, therefore, there is not even a mild presumption here. Accordingly, this maxim is at best a description, after the fact, of what the court has discovered from context.

Id. (quoting R. Dickerson, The Interpretation and Application of Statutes 234-35 (1975)).

9

doctrine, which is a judicially created concept that predates the Lanham Act, we should be hesitant to read the Act as limiting the doctrine's reach. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." Midatlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986).

In further contrast to Park 'N Fly, Littlefuse has pointed to no example of legislative history showing that Congress actually considered adding functionality into § 1115(b) but chose not to. With a lack of explicit elimination of the functionality defense in the Lanham Act as well as a lack of any legislative history indicating its implicit elimination, we should be wary to read such an intent into the Act. The language of § 1115(b), read in the context of the entire Lanham Act and against the history of the functionality doctrine simply does not evince an intent to preclude functionality as a defense to incontestable registrations.

As previously discussed, Congress recently amended the Lanham Act to explicitly add functionality as a defense under § 1115(b). Littlefuse argues that these additions, which did not become effective until October 30, 1998, prove that the functionality doctrine was not available as a defense before the date of enactment. To bolster this argument, Littlefuse points to § 201(b) of the technical corrections provision, which states that the amendments shall only apply to civil actions filed on or after the effective date. We find this argument unpersuasive. The technical corrections section includes twelve different corrections to the Lanham Act. Not all of these corrections deal with functionality. Examining the overall language and context of the technical corrections as well as the legislative history behind them, we do not believe that Congress intended to treat functionality as a new feature of the Lanham Act.

First, we note that Congress designated the section of amendments at issue as "technical corrections" to the Lanham Act and set the section off in a separate title. While section headings cannot be used to limit the plain meaning of the text, they may be used where, as here, the text itself

10

is ambiguous. <u>Scarborough v. Office of Personnel Management</u>, 723 F.2d 801, 811 (11th Cir. 1984). While the text of the corrections does not explicitly tell us whether the additions and subtractions constitute new law, their designation as technical corrections tends to indicate that they were merely changes meant to clarify existing law.

Further, these technical corrections did not only address functionality in the context of incontestable registrations. Besides adding functionality to the list of defenses against incontestable registrations, § 201 of the Trademark Law Treaty Implementation Act also added explicit references to the functionality doctrine in all other relevant sections of the Lanham Act. Included in these additions is one to §1052, which is the provision governing the initial registrability of trademarks. If Littlefuse's argument were correct, the inclusion of this correction would mean that functionality was not a bar to the initial registration of a trademark before October 30, 1998. Obviously, this is not true and even Littlefuse does not argue that functionality was inapplicable to non-incontestable registrations prior to the amendments. Littlefuse points to no evidence of congressional intent to treat one functionality correction as signifying new law while treating another functionality correction as a codification of existing law.

Moreover, the legislative history of the Trademark Law Treaty Implementation Act indicates that the functionality provisions were meant to codify existing law and correct the flawed result reached by the Fourth Circuit in <u>Shakespeare</u>. House Report No. 105-194 concerns the passage of H.R. 1661, the House version of the Trademark Law Treaty Implementation Act. This report explains the need to add functionality as an enumerated defense to incontestable registrations: "These changes become necessary to clarify confusion among certain courts over functionality issues." H.R. Rep. No. 105-194 (1997). Littlefuse argues that this statement does not tell us which courts were confused, but this argument is meritless. The only case to hold that functionality was not available against an incontestable registration was <u>Shakespeare</u>. In the Senate, we find further clarification of the intent behind the technical corrections provisions. Senator Hatch, introducing S.

2192, explained that the technical corrections would "make explicit some of the current practices of the Patent and Trademark Office with respect to the trademark protection of matter that is wholly functional" and would "help clarify the law in useful ways." 144 Cong. Rec. S6564-03 (daily ed. June 18, 1998) (statement of Sen. Hatch). These statements are inconsistent with treating the functionality corrections as a change in the trademark law.

The functionality doctrine serves the extremely important function of avoiding conflict between the trademark law and the patent law. It does this by denying a perpetual exclusive right in a wholly functional product feature or configuration under the trademark law, where such a grant under the Patent Act would be unconstitutional. Under the doctrine, any exclusive right to functional features must be obtained under the Patent Act subject to the constitutional requirement of limited duration. Qualitex Co., 514 U.S. at 164-65, 115 S.Ct. at 1304. McCarthy, supra, § 7:64. This doctrine was established before the enactment of the Lanham Act, and the Act did not repeal it. Against this backdrop, we do not read the incontestability provisions of the Lanham Act as eliminating the functionality defense. The enactment of the Trademark Law Treaty Implementation Act by Congress only strengthens this reading.

## IV. CONCLUSION

We hold that a trademark registration that has achieved incontestable status under 15 U.S.C. § 1065 is still subject to attack based on functionality. The functionality doctrine is an important judicially created concept that was not abrogated by the enactment of the incontestability provisions of the Lanham Act. In its brief, Littlefuse wrote that it chose not to challenge the district court's factual finding of functionality because of its own contention that functionality was irrelevant in a case based on an incontestable registration. Because Littlefuse has failed to present argument on that

12

issue, we need not review the district court's finding. <u>Sims v. Mashburn</u>, 25 F.3d 980, 983 (11th Cir. 1994) (issues not presented in briefs are waived).

AFFIRMED.