**LEVI STRAUSS & CO., Plaintiff,**

**v.**

**GTFM, INC., et al., Defendants.**

**No. C–01–0745–PJH.**

United States District Court,
N.D. California.

March 29, 2002.

---

972

Timothy R. Cahn, Gregory S. Gilchrist, Nancy L. Tang, Gail I. Nevius, Legal Strategies Group, Emeryville, CA, for plaintiff.

Lawrence G. Townsend, Law Office of Lawrence G. Townsend, San Francisco, CA, Koorosh Afshari, Owen Wickersham & Erickson, San Francisco, CA, for defendants.

## ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS

HAMILTON, District Judge.

The motion of plaintiff and counterdefendant Levi Strauss & Co. for summary judgment on the counterclaims alleged by defendant and counterclaimant GTFM, Inc., came on for hearing on March 27, 2002, before this court, the Honorable Phyllis J. Hamilton presiding. Plaintiff appeared by its counsel Timothy R. Cahn, and defendant appeared by its counsel Lawrence G. Townsend. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion for the following reasons.

### INTRODUCTION

This is a case alleging trademark infringement and trademark dilution, in violation of federal law. Both plaintiff Levi Strauss & Co. ("Levi") and defendant GTFM, Inc. ("GTFM") manufacture and sell clothing, including jeans and shirts. GTFM manufactures and sells jeans under the FUBU brand. The FUBU jeans have rear patch pockets and a tab attached to one of the rear pockets at the lower left seam. GTFM also manufactures and sells shirts with patch pockets on the upper front of the shirt, with a tab attached to the left side seam of one of the pockets. Levi alleges that GTFM has infringed Levi's "Tab Device Trademark," in violation of the Lanham Act, 15 U.S.C. § 1051, et seq., by manufacturing and selling clothing that displays a tab sewn into one of the regular structural seams of the pocket.

GTFM challenges five of Levi's federal registrations for use of the Tab trademark on pants, and alleges two counterclaims—one seeking partial cancellation based on

abandonment, and one seeking "equitable rectification" of the registrations. GTFM asserts that Levi's rights in the Tab device are "limited to tabs having definite location, shape, dimensions, width-to-length ratio, and other specific characteristics consistently used by Levi and capable of precise definition." Counterclaim ¶ 17. GTFM refers to this as the "Levi's Traditional Tab." *Id.* GTFM alleges a claim of partial cancellation based on abandonment, asserting that Levi has abandoned any rights it might have had other than rights in the "Traditional Tab."

Alternatively, GTFM claims that the literal scope of the marks claimed in the registrations at issue is excessively vague and unclear as to the precise shape, dimension, and location of the Tab device, and that each registration can therefore be read to describe "phantom marks"—i.e., that each registration appears to cover multiple locations, sizes, shapes, dimensions, and colors. GTFM seeks rectification of the registrations to conform the scope to the actual use and to conform the registrations to the Lanham Act's "one mark per application" rule.

Levi now seeks summary judgment, on the basis that GTFM's counterclaims constitute a challenge to Levi's trademark, but do not fall within one of the allowable grounds for challenging a trademark specified in the Lanham Act.

## DISCUSSION

### A. Legal Standard

■■■ Because of the factual nature of trademark disputes, summary judgment is disfavored in the trademark arena. *Interstellar Starship Servs., Ltd. v. Epix, Inc.,* 184 F.3d 1107, 1109 (9th Cir.1999), *cert. denied,* 528 U.S. 1155, 120 S.Ct. 1161, 145 L.Ed.2d 1073 (2000). In general, however, summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party. *Id.*

■■■ A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.* If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

When the moving party has carried its burden under Rule 56(c), the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986). In short, once the moving party has met its burden, while inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party, that party can defeat the motion only by providing evidence on which the finder of fact could reasonably find for the opposing party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### B. Levi's Motion for Summary Judgment

Levi asserts that the five registrations at issue in this case, the earliest of which dates back to the 1930s, are incontestable. Levi argues that the claims asserted in GTFM's counterclaim—seeking to "partially cancel" or to "rectify" Levi's federal registrations for its Tab trademark—are not cognizable as a matter of law because they do not fall within any of the nine exceptions to incontestability enumerated in § 33(b) of the Lanham Act, 15 U.S.C. § 1115(b) (providing that an incontestable mark is subject to defense or attack on specified grounds). Levi contends that under the Supreme Court's decision in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), these limitations on incontestability are strictly interpreted. Levi also argues that GTFM cannot state a claim for "partial" cancellation, and that even if such a claim were cognizable, GTFM has not established that Levi has abandoned its marks. With regard to the rectification claim, Levi asserts that there is nothing incomplete or vague about Levi's registrations that requires clarification, and that the claim fails because GTFM does not identify with precision the particular amendment to the registrations that it seeks.

### 1. Partial cancellation based on abandonment

GTFM challenges Levi's Tab trademark on the ground set forth in 15 U.S.C. § 1115(b)(2)—"[t]hat the mark has been abandoned by the registrant"—and claims that it has plainly stated a claim for partial cancellation based on abandonment. GTFM asserts that the Tab trademark has two aspects—the tab, and the location of the tab—and that Levi has intentionally ceased using the Tab on its jeans in any location other than the upper left side seam of the right rear pocket. GTFM refers to this as the "Traditional Tab," and argues that any rights Levi may have once had in connection with any "non-traditional tabs" have been abandoned, and seeks "partial cancellation" on that basis.

Section 37 of the Lanham Act authorizes the court, "[i]n any action involving a registered mark," to "determine the right to registration, order the cancellation of registrations, ... restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.[1] A registration may be canceled "in whole" or "in part." *Id.* A trademark registration may be canceled at any time if the mark becomes generic or is abandoned, if it was obtained through fraud or contrary to some other provision of the Lanham Act, or if the registered mark is being used by or with the permission of the registrant so as to misrepresent the source of the goods or services in connection with which it is used. *See id.* § 1064. In addition, registration may be challenged for any reason that would have been sufficient to refuse the original registration, but an action for

---

**1.** Section 14 authorizes "any person who believes that he is or will be damaged by the registration of the mark" to petition the Commissioner of Patents and Trademarks for cancellation of the mark. 15 U.S.C. § 1064. The effect of § 1119 is to give the courts and the Patent and Trademark Office concurrent jurisdiction to cancel registrations. *Informix Software, Inc. v. Oracle Corp.,* 927 F.Supp. 1283, 1285–86 (N.D.Cal.1996); *see McCarthy on Trademarks and Unfair Competition* (4th ed.2002) § 30:109.

cancellation on this basis must be filed within five years of the date of registration. *Id.*

Section 15 provides that once the registered mark has been in continuous use for five years, rights of incontestability attach. 15 U.S.C. § 1065. Before a mark achieves incontestability status, registration provides prima facie evidence of the registrant's exclusive right to use the mark in commerce. *Id.* § 1115(a). After the five-year threshold has passed, the Lanham Act eliminates the common-law defenses of good faith and lack of knowledge. *Id.* § 1072. Registration of a mark that has become incontestable provides conclusive evidence of the right of registrant's ownership of the mark and right to use it, although the right to use the mark remains subject to the nine defenses or exceptions enumerated in § 1115(b).

> The Lanham Act expressly provides that before a mark becomes incontestable an opposing party may prove any legal or equitable defense which might have been asserted if the mark had not been registered.... With respect to incontestable marks, ... registration is *conclusive* evidence of the registrant's exclusive right to use the mark, subject to the conditions of [15 U.S.C. § 1065] and the ... defenses enumerated in [15 U.S.C. § 1115(b)].

*Park 'N Fly,* 469 U.S. at 196, 105 S.Ct. 658. One of the enumerated defenses is "[t]hat the mark has been abandoned by the registrant." *Id.* § 1115(b)(2).[2]

 A mark shall be deemed to be "abandoned" if "its use has been discontinued with intent not to resume such use ... [or w]hen any course of conduct of the owner ... causes the mark to become the generic name for the goods or services on or in connection with which it is used ...." *Id.* § 1127. Proof of nonuse in the United States for three consecutive years establishes a prima facie case of abandonment. *Id.* The prima facie case "eliminates the challenger's burden to establish the intent element of abandonment as an initial part of [its] case," and creates a rebuttable presumption that the registrant has abandoned the mark without intent to resume or continue use under the statute. *Imperial Tobacco, Ltd. v. Philip Morris, Inc.,* 899 F.2d 1575, 1579 (Fed.Cir.1990). Once created, a prima facie case of abandonment may be rebutted by showing valid reasons for nonuse or lack of intent to abandon the mark. *Abdul–Jabbar v. Gen'l Motors Corp.,* 85 F.3d 407, 411 (9th Cir.1996). Abandonment is a question of fact. *Rivard v. Linville,* 133 F.3d 1446, 1449 (Fed. Cir.1998).

 To establish partial abandonment, GTFM must show that Levi "is not using its mark on the goods ... that will be effectively excluded by the proposed restriction." *Milliken & Co. v. Image Indus., Inc.,* 39 U.S.P.Q.2d 1192, 1996 WL 383905 (Trademark Tr. & App. Bd.1996) (claim that owner had abandoned mark on nylon fiber sold in residential broadloom carpeting); *see also Dak Indus., Inc. v.*

---

**2.** At the time of the decision in *Park 'N Fly* (1985), there were only seven exceptions listed in § 1115(b). The statute was amended in 1988 to add the "equitable principles" exception and in 1998 to add the "functionality" defense. Under the present version of § 1115(b), the nine exceptions or defenses are 1) that the registration or incontestability was obtained fraudulently; 2) that the registrant abandoned the mark; 3) that the registered

mark is being used to misrepresent the source of the goods or services; 4) that the defendant is making fair use of the registrant's mark to describe its goods and services; 5) that the defendant has made innocent local use of the mark; 6) that the defendant used and registered its mark first; 7) that the registrant's mark has been used to violate the antitrust laws; 8) that the registrant's mark is functional; and 9) that equitable principles apply.

*Daiichi Kosho Co.,* 35 U.S.P.Q.2d 1434, 1995 WL 454108 (Trademark Tr. & App. Bd.1995) (claim that owner had ceased use of its mark on open reel audio tape). To the extent that courts have applied a "partial abandonment" theory, it has been limited to situations where the registration describes a class of goods or services on which the owner has ceased using his mark. *Id.; see also Top Producer Sys., Inc. v. Software Sciences Ltd.,* 43 U.S.P.Q.2d 1853 (D.Or.1997) (counterclaim that trademark owner had abandoned its mark on computer software for the real estate industry); *Eurostar, Inc. v. "Euro-Star" Reitmoden GmbH & Co.,* 34 U.S.P.Q.2d 1266, 1995 WL 231387 (Trademark Tr. & App. Bd.1995) (claim that owner had abandoned mark with respect to certain "channels of trade" in the United States).

■■■ The Tab mark used by Levi on pants is location-specific. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 228 U.S.P.Q. 346, 351 (9th Cir.1985). The registrations indicate that the mark is located on the structural seam on the rear patch pocket. *See also Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 819–820 (9th Cir.1980) (location of Tab mark is limited to the right rear patch pocket). GTFM argues that the Tab marks function as marks "only in specified locations, if anywhere," and concludes that it is "logical" that if use of a location-specific mark has ceased at a certain location, rights to that location are lost, just as they are when an owner has abandoned a line of goods, a channel of trade, or a specific geographic territory.

There is no dispute that Levi has used the Tab mark on pants and other garments in the manner described in the registrations, and that it continues to do so. Nor has Levi ceased using the mark on any goods set forth in the registrations. The only goods set forth in the registra-

tions at issue in this motion (with the exception of the original registration) are pants with rear patch pockets. It is undisputed that Levi's continues to use the mark on the structural seam of the rear pants pocket. GTFM does not argue that Levi has ceased using the mark in a particular channel of trade or geographic territory.

Since the mark is location-specific, and the location is as described in the registrations and in the Ninth Circuit opinions interpreting those registrations, and Levi has used and continues to use the mark as depicted in the descriptions and drawings that comprise the registrations, GTFM has no basis for claiming abandonment. A mark must be used (or at least described in the registration) before it can be abandoned, but GTFM has not identified the allegedly abandoned use. The motion for summary judgment on the claim of partial cancellation must be GRANTED because it is undisputed that Levi has used and continues to use the Tab trademark as described in the registrations, and GTFM has not established a triable issue of fact that precludes summary judgment.

2. Rectification based on "equitable principles"

GTFM asserts a claim of rectification under the exception to incontestability set forth in § 1115(b)(9)—"[t]hat equitable principles, including laches, estoppel, and acquiescence, are applicable." GTFM argues that rectification is appropriate because the registrations at issue are so vague and overbroad that they constitute "phantom marks," which violates the Lanham Act's "one mark per application" rule. GTFM claims that factual disputes regarding this alleged vagueness and overbreadth preclude summary judgment, and that the "phantom-mark nature" of the registrations at issue compels "equitable

rectification" under § 1115(b). Finally, GTFM asserts that it has adequately alleged a claim for rectification, despite having not specified the exact relief it seeks, because Levi's has not provided it with an adequate record so it can determine what relief would be proper.

■ A phantom registration is one in which the description of the mark contains a missing element, such as a word, an alpha-numeric designation, or another component, which is subject to change. The applicant represents the changeable— or "phantom"—element by inserting a blank, or by using dots, dashes, underlining, or a designation such as "XXXX." The phantom element acts as a sort of "placeholder" for an element that changes, depending on the use of the mark. *See In re Int'l Flavors & Fragrances, Inc.,* 183 F.3d 1361, 1363 n. 1 (Fed.Cir.1999). Examples include marks incorporating a date (usually a year), a geographic location, or a model number that is subject to change. Jerome Gilson, *Trademark Protection and Practice,* PTO Application Guides, App. 9– 165, Guide No. 1–99 (2001). *McCarthy* provides an example of a hypothetical "attempt to register the designation BIOTIC _____ BLEND for coffee, the applicant intending to substitute various geographical names such as BIOTIC NEW YORK BLEND, BIOTIC CALIFORNIA BLEND, BIOTIC ROCKY MOUNTAIN BLEND, [and] BIOTIC SUNBELT BLEND." *McCarthy on Trademarks* § 19:61.1.

In *International Flavors,* the Federal Circuit held that an application with a "phantom" element in the mark was unregistrable because it included more than one mark in a single application. *Int'l Flavors,* 183 F.3d at 1368. The applicant had filed three applications to register the designations "Living XXXX," "Living XXXX Flavor," and "Living XXXX Flavors" for essential oils, flavor substances,

and fragrances. Each application stated that the meaning of "XXXX" was for a specific herb, fruit, plant, or vegetable. The court held that in order to provide meaningful notice of the registrant's ownership of the mark, the mark as registered must accurately reflect the mark that is used in commerce, so that someone who searches for a similar mark will locate the registration. *Id.* at 1367. The court stated that marks with "phantom" elements encompass too many combinations and permutations to make a thorough and effective search possible, and therefore, registration of such marks does not provide adequate notice to the public. *Id.* at 1368.

■ In the present case, Levi's registrations contain no dashes or blanks or missing elements, and Levi argues that the "phantom marks" doctrine of *International Flavors* does not apply. GTFM contends however, that the Federal Circuit's definition of a phantom mark—"a mark with a missing element"—is broad enough to cover "pictorial representations" such as Levi's registrations, and claims that the recent decision in *In re Elvis Presley Enterprises, Inc.,* 50 U.S.P.Q.2d 1632, 1999 WL 317628 (Trademark Tr. & App. Bd.1999), supports this position. It is true that recent decisions of the Trademark Trial and Appeal Board have upheld the rejection of registrations for violation of the "one mark per application" rule in cases where the applicants were attempting to claim a mark with an unlimited number of image or pattern representations, but where there was no "missing element" as described by the Federal Circuit in *International Flavors.* Nevertheless, the court does not agree with GTFM that Levi's registrations comprise "phantom" marks.

In *Presley,* the applicant sought to register as a trademark for cotton fabric "the

likeness and image of Elvis Presley," in all possible manners of presentation without limitation as to age, manner of dress, or pose. Registration was refused on the basis that the applicant had failed to submit an acceptable drawing of the mark— one that showed "a substantially exact representation of the mark as intended to be used on or in connection with the goods specified in the application." *Id.* at 1632, 1999 WL 317628. The applicant argued that every possible pose of Elvis Presley could not be drawn for one application, and insisted that an exception should be made under the Trademark Rule stating that "the drawing of a mark may be dispensed with in the case of a mark not capable of representation by a drawing." *Id.* at 1633, 1999 WL 317628 (citing Trademark Rule 2.51(c)).

The court rejected this argument, finding that the application constituted an impermissible attempt to claim trademark rights in all likenesses and images of Elvis Presley. *Id.* at 1633–34, 1999 WL 317628.

> The likeness and image of an infant Elvis Presley, if it functions as a trademark or service mark at all, is vastly different from the likeness and image of Elvis Presley in 1958, not to mention 1977. Likewise, the likeness and image of Elvis Presley dressed in an Army uniform with short hair is clearly different from that of Elvis Presley in jump suit stage attire with long hair and wide sideburns.

The court concluded that the registration was properly refused because the application included more than one mark. *Id.* at 1633, 1999 WL 317628.

To similar effect is the decision in *In re Upper Deck Co.*, 59 U.S.P.Q.2d 1688, 2001 WL 253632 (Trademark Tr. & App. Bd.2001). In that case, the applicant sought to register a mark consisting of a hologram device applied to trading cards. The description identified the mark as a hologram device, in any size, shape, content, or position on the trading card. The court noted that the mark as shown on the specimens of record covered "a variety of shapes, such as a baseball field, a racing flag, a star, a diamond and others, in various sizes and positions on the cards." *Id.* at 1689, 2001 WL 253632. The registration had been refused on the basis that the applicant was seeking to register more than one mark. The applicant argued that there were no missing, or "phantom," elements, because the only device for which registration was sought was the presence of the hologram.

The *Upper Deck* court noted strong similarities between the case before it and the *Presley* case, finding that in each instance, the applicant was "attempting to register an idea or concept, rather than a single mark." *Id.* at 1691, 2001 WL 253632. The court explained that in *Presley* the applicant sought to register all likenesses of a particular person in all possible permutations, regardless of the appearance of the person or the specific pose; similarly, in the case before the court, the applicant wished to register the presence of a hologram on a trading card, regardless of physical attributes such as shape or size. *Id.* The court found that while there may have been no missing or changeable elements in the mark as described, unlike the XXXX-containing word marks in *International Flavors*, there nevertheless were "clearly missing or changeable elements insofar as the images presented to the public" were concerned. *Id.* at 1690–91, 2001 WL 253632. The court concluded that the rationale for refusing registration in *International Flavors*—that a mark with missing elements would not accurately reflect the way the mark was used in commerce and would not provide constructive notice of the registrant's ownership of the mark—was fully applicable to the case before it. *Id.* at 1690, 2001 WL 253632.

In this case, GTFM argues that the Tab trademark contains changeable elements and that the registrations therefore violate the "one mark per application" rule. GTFM argues as follows with regard to the five registrations at issue:

(a) Registration No. 356,701, the oldest registration (originally issued in 1938) states, in part:

The trade-mark consists of a small marker or tab of textile material or the like, colored red, appearing on or affixed permanently to the exterior of the garment in a position that the red tab is visible while the garment is being worn.... In practice, the trade-mark is applied to the goods by stitching an end of a red marker or tab into one of the rectangular structural seams of the garment so that the stitching of said seam secures one end of the red tab to the garment with a portion thereon extending visibly from the edge of the seam.

The drawing shows two rectangular pieces of fabric joined by a seam, with a small rectangular tab attached at that seam and extending out from it.

GTFM contends that it is not clear from No 356,701 what is meant by "small;" what is meant by a "tab" or a "small marker," and whether they are the same thing or different things; what shape the tab or marker is supposed to be; what is meant by "or the like" with reference to "textile."

(b) Registration No. 577,490 (originally issued in 1953) states, in part:

The trade-mark consists of a small marker or tab, of textile material or the like, colored red, appearing on and affixed permanently to the exterior of the garment in a position that the red tab is visible, while the garment is being worn.... In practice, the trade-mark is applied to the goods by stitching an end of a red marker or tab into one of the rectangular structural seams of the hip pockets of the garment so that the stitching of said seam secures one end of the red tab to the garment with a portion thereon extending visibly from the edge of the seam.

The drawing shows a rear view of a pair of pants with patch pockets, with a small tab attached at the upper portion of the left vertical seam of the right rear pocket.

No. 356,701 differs from No. 577,490 in that No. 356,701 states that the red tab is stitched into "one of the regular structural seams of the garment," while No. 577,490 states that the red tab is stitched into "one of the regular structural seams of the hip pockets of the garment." GTFM contends that this second registration (No. 577,490) suffers from the same deficiencies as the first one (No. 356,701) except that the second locates the tab in one of the structural seams of the hip pocket.

GTFM claims that there is no evidence that Levi has ever attached the tab anyplace other than the upper left side of the right rear pocket. GTFM refers to this placement as the "Traditional Tab" and claims that the registration is overbroad to the extent that it covers placement of the tab on the left rear pocket seam or anywhere on the right rear pocket seam other than on the upper left side.

(c) Registration No. 774,625 (originally issued in 1964) states that "[t]he mark consists of a small marker or black tab affixed to the exterior of the garment at the hip pocket." The drawing shows a rear view of a pair of pants with patch pockets, with a small tab attached at the upper portion of the left vertical seam of the right rear pocket (basically the same drawing as in No. 577,490). GTFM argues that this registration is overly vague for the reasons stated with regard to the first two registrations discussed above, and also because the registration is not limited to any structural seams, although evidence in the record supports Levi's use of tabs

connected only to the right seam of the right rear pocket. (Presumably GTFM means the left seam of the right rear pocket.)

(d) Registration No. 775,412 (originally issued in 1964) states that "[t]he mark consists of a small marker or white tab with the name 'Levi's' superposed thereon, which is affixed to the exterior of the garment at the hip pocket." The drawing shows a rear view of a pair of pants with patch pockets, with a small tab attached at the upper portion of the left vertical seam of the right rear pocket (basically the same drawing as in Nos. 577,490 and 774,625). GTFM argues that this registration is overly broad for the same reason as the first three above, except that this registered mark is more distinctive because the Tab bears the name "Levi's."

(e) Registration No. 1,157,769 (originally issued in 1981) states that "[t]he mark consists of a small marker or tab attached to the exterior of the garment at the hip pocket," and that "[a]pplicant disclaims the representation of the goods apart from the mark as shown." The drawing shows a rear view of a pair of pants with patch pockets, with a small tab attached at the upper portion of the left vertical seam of the right rear pocket (basically the same drawing as in Nos. 577,490, 774,625, and 775,412). GTFM argues that this registration is vague and overbroad because it does not define "small," "marker," or "tab," and because the mark is not limited by color, shape, material, or specific location of the tab on the rear pocket.

The court finds that unlike the applications in *Presley* and *Upper Deck*, the registrations for the Tab trademark are specific, definite, and clear. The Tab trademark is limited by material, location, type of garment, and relative size. Each of the registrations contains a clear drawing showing a small, rectangular tab of a defined dimension extending from the seam of a garment, and describes the manner in which the tab is affixed to the garment. The first four registrations indicate a color for the tab, and the last four also show the location of the tab on a left structural seam of a right rear patch pocket. The words of the registrations, taken in conjunction with the drawings, provide clear notice of the scope of the Tab mark.

GTFM has not established a triable issue with regard to its claim that the registrations are vague and overbroad, and the court finds that the registrations do not constitute "phantom marks." Moreover, the question is academic, as GTFM has not articulated a legally sufficient basis for canceling or rectifying Levi's incontestable registrations. Levi argues that under *Park 'N Fly*, the § 1115(b) exceptions or defenses have been strictly interpreted in actions challenging incontestable marks, and that no defenses to incontestability may be asserted other than on the grounds specifically enumerated in the Lanham Act. In *Park 'N Fly*, the defendant challenged the plaintiff's incontestable registration on the basis that the trademark was "merely descriptive." The Supreme Court held that it was too late to raise descriptiveness as a defense against a claim of infringement, because the mark was incontestable and descriptiveness was not one of the grounds enumerated in § 1115(b). *Park 'N Fly*, 469 U.S. at 196–97, 105 S.Ct. 658. Levi contends that the *Park 'N Fly* ruling should be read as barring the assertion of any defense against a claim of incontestability, save those listed in § 1115(b). GTFM maintains that *Park 'N Fly* should not be read so broadly, and that the holding does not preclude the assertion of defenses other than the ones enumerated in § 1115(b) to challenge incontestability.

It is true that the Supreme Court in *Park 'N Fly* did not go beyond its holding that the defense of "merely descriptive" was foreclosed, and did not find that only the enumerated defenses could be asserted. Indeed, the Court expressly stated that it was not addressing the question whether equitable defenses such as laches and estoppel were foreclosed. In a 1999 decision, the Eleventh Circuit held that *Park 'N Fly* did not bar the assertion of a defense of functionality[3] to challenge incontestability, although it was not one of the defenses enumerated in § 1115(b). *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1211 (11th Cir.1999). GTFM relies on the holding in *Pudenz* to support its argument.

At the time the complaint in *Pudenz* was filed, one circuit, the Fourth, had ruled that *Park 'N Fly* should be interpreted as precluding any defense not enumerated in § 1115(b), including functionality, from being used to challenge incontestability. *See Shakespeare Co. v. Silstar Corp. of America, Inc.*, 9 F.3d 1091, 1097 (4th Cir.1993), *cert. denied*, 511 U.S. 1127, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994). While the *Pudenz* litigation was pending, Congress passed the Trademark Law Treaty Implementation Act, which specifically enumerated functionality as a defense against a claim of infringement of incontestable trademark registrations, and had the effect of amending § 1115(b) to include an additional defense. According to the legislative history, one purpose of this amendment was "to clarify confusion among certain courts over functionality issues." H.R.Rep. No. 105–

194 (1997), *cited in Pudenz*, 177 F.3d at 1211.

Thus, the issue before the Eleventh Circuit was whether the functionality defense applied before the amendment of § 1115(b). The court held that it did, relying on the patent clause of the U.S. Constitution, Article I, section 8, clause 8 (Congress has power "to Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive right to their respective writings and discoveries"). The court concluded, based on *Qualitex*, that "the job of working out th[e] balance [between encouraging creation and disclosure of new, useful, and nonobvious advances in technology and design, and allowing the inventor the exclusive right to practice his invention for a period of years] is given to patent law, and not trademark law." *Pudenz*, 177 F.3d at 1208. Thus, "when the operation of the Lanham Act would upset the balance struck by the Patent Act, the Lanham Act must yield." *Id.*

*Pudenz* is distinguishable from the present case, however, because the Eleventh Circuit did not rely on a broad theory of "equitable principles" as GTFM is attempting to do here. Instead, the court construed the Lanham Act in light of the constitutional authorization of the granting of exclusive rights in intellectual property. Even assuming that the Eleventh Circuit's analysis was correct (as opposed to the Fourth Circuit's analysis in *Shakespeare* ), the *Pudenz* decision is not relevant here, as there is no question of any conflict

---

**3.** The functionality doctrine helps avoid conflict between trademark law and patent law, by denying a perpetual exclusive right in a wholly functional product feature or configuration under trademark law, where such a grant under the Patent Act would be unconstitutional. *Pudenz*, 177 F.3d at 1211. Under the doctrine, any exclusive right to functional

features must be obtained under the Patent Act subject to the constitutional requirement of limited duration. *Id.* (citing *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (monopoly over functional features would discourage invention and would inhibit competition)).

between the Trademark Act and the Patent Act.

Similarly, in *Park 'N Fly*, there was no question of a conflict between the Trademark Act and the Patent Act. Instead, the Supreme Court relied on the doctrine of judicial restraint, emphasizing that Congress had enacted a statute containing the enumerated defenses, and could have made the list non-exclusive had it wanted to. The Court stated that "[t]he statutory provisions that prohibit registration of a merely descriptive mark but do not allow an incontestable mark to be challenged on that ground cannot be attributed to inadvertence by Congress." *Park 'N Fly*, 469 U.S. at 196–97, 105 S.Ct. 658 (also noting that the Conference Committee agreed to an amendment providing that no incontestable right could be acquired in a mark that was generic, and stating that Congress could easily have denied incontestability to merely descriptive marks as well as to generic marks had that been its intention). In addition, while the Court did not squarely hold that only the enumerated defenses could be used to challenge incontestability, it did caution against "expand[ing] the meaning of 'equity' to the point of vitiating the more specific provisions of the Lanham Act," and stated that "the power of the court to cancel registrations and 'to otherwise rectify the register,' § 37, 15 U.S.C. § 1119, must be subject to the specific provisions concerning incontestability." *Id.* at 203, 105 S.Ct. 658.

In this case, the parties do not dispute that Levi's registrations are incontestable. Indeed, four of the registrations have been specifically held to be incontestable. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 200 U.S.P.Q. 434, 443 (N.D.Cal.1978), *aff'd*, 632 F.2d 817 (9th Cir.1980). Were the registrations not incontestable, § 1115(a), which permits a challenge to a registration on any legal or equitable ground "which might have been asserted if such mark had not been registered," would allow GTFM to challenge the registrations on the basis that they contain phantom marks.

■ However, an incontestable registration constitutes conclusive evidence of the registrant's right to use the mark, subject to the conditions of § 1064 and the exceptions enumerated in § 1115(b). If a challenger were permitted to raise any and all non-enumerated defenses under the guise of "equitable principles," incontestable status would be superfluous, and incontestability would add nothing to the protections against cancellation already provided in § 1064. *See Park 'N Fly*, 469 U.S. at 197, 105 S.Ct. 658. This would surely "expand the meaning of equity to the point of vitiating" the distinction between contestability and incontestability. For this reason, the court finds that § 1115(b)(9) does not provide a mechanism for importing a "phantom mark" exception to incontestability.

■ As an alternate theory to support its rectification claim, GTFM asserts that the doctrine of "tacking" supports conforming Levi's rights for each registration to a single tab device that has actually been used or to any tab device that is legally identical. "Tacking" is a theory of constructive use, under which a trademark owner claims priority of a mark based on the first use date of a similar, but technically distinct, mark—but only in the exceptionally narrow instance where the previously used mark is the legal equivalent of the mark in question or is so indistinguishable from that mark that consumers consider both the same mark. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir.1999). "The marks must create the *same, continuing commercial impression*, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." *Id.*

(citation omitted). Tacking is allowed, therefore, where the two marks are so similar that consumers would regard them as essentially the same—without tacking, a trademark owner's interest in his property would be reduced each time he made the slightest alteration to the mark, which would discourage him from altering the mark in response to consumer preferences or new advertising or marketing styles. *Id.* at 1048.

GTFM claims that Levi is attempting to assert that by using the "Traditional Tab" in one predominant location on the right rear pocket, it can maintain identical rights in connection with any other location on that pocket. GTFM argues that under the standard articulated in *Brookfield*, the two formats must be legally identical, not just similar or even highly similar, and asserts that under this standard, Levi cannot "tack" the use of its "Traditional Tab" to any tab not having the exact location of the "Traditional Tab." The court finds, however, that the "tacking" doctrine does not apply in this case because "tacking" occurs when a trademark owner introduces a new mark and tries to obtain priority over a rival user of a similar mark by relating back ("tacking on") the new mark to its prior registered mark. *McCarthy on Trademarks*, § 17:26. Tacking is successful only when the later-adopted mark is essentially the same as the former one. *Brookfield*, 174 F.3d at 1048–49. The "tacking" doctrine is inapplicable here because Levi does not assert priority of use in connection with a new mark.

The motion for summary judgment on the rectification claim is GRANTED because GTFM has not established the existence of any valid authority for canceling or rectifying Levi's incontestable marks. Moreover, GTFM has not adequately pled the form of the rectification it seeks. Under Federal Rule of Civil Procedure 8, claims asserted against a party must be sufficient to show "that the pleader is entitled to relief," and must include a "demand for judgment for the relief the pleader seeks." The court finds that the allegations in the counterclaim are insufficient to put Levi on notice of the claims being asserted against it. GTFM has not indicated exactly what it alleges that Levi has abandoned, or what it alleges is defective about the registrations. Moreover, a party seeking relief by way of partial cancellation of a registration should be able to provide in its pleading the particulars of any restriction it seeks to have imposed. *Aries Sys. Corp. v. World Book, Inc.*, 23 U.S.P.Q.2d 1742, 1749 n. 24, 1992 WL 215311 (Trademark Tr. & App. Bd.1992).

## CONCLUSION

In accordance with the foregoing, the court hereby GRANTS Levi's motion for summary judgment on the counterclaims. This order fully adjudicates the motion listed at No. 35 on the clerk's docket for this case.

**IT IS SO ORDERED.**